# 14-1505

In the

# United States Court of Appeals
# For the Second Circuit

RAYMOND C. KNOX,

*Plaintiff-Appellant,*

v.

TOWN OF SOUTHEAST, MICHAEL RIGHTS, Town Supervisor,
individually and in their official capacity, DWIGHT YEE,
Town Councilman, individually and in their official capacity,
ROBERT CULLEN, Town Councilman, individually and in their
official capacity,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

**LAW OFFICE OF COSTANTINO FRAGALE**
*Attorneys for Plaintiff-Appellant*
721 West Boston Post Road
Mamaroneck, New York 10543
(914) 337-4001

*Appeal Press, LLC* - (914) 761-3600  (212) 267-6602  (16792)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF ISSUES.................................................................2

STATEMENT OF THE CASE ............................................................4

SUMMARY OF ARGUMENT ...........................................................9

ARGUMENT ......................................................................................

POINT I      STANDARD OF REVIEW................................................ 11

POINT II     PLAINTIFF WAS DENIED DUE PROCESS...................13

POINT III    PLAINTIFF HAS A VIABLE CLAIM UNDER THE ADEA AS
             DEMONSTRATED BY THE AGEIST BELIEFS HELD BY THE
             TOWN DECISION MAKERS...........................................26

POINT IV     PLAINTIFF HAS A VIABLE CLAIM UNDER THE FMLA..........32

POINT V      PLAINTIFF HAS A VIABLE CLAIM UNDER THE ADA SINCE
             HE WAS TERMINATED FOR PRETEXUAL REASONS AND
             HIS RETURN FROM FMLA LEAVE BECAUSE OF HIS
             DISABILITY WAS CLOSELY FOLLOWED BY ADVERSE
             EMPLOYMENT ACTIONS...............................................35

POINT VI     PLAINTIFF HAS VIAABLE CLAIMS UNDER THE NYHRL
             FOR AGE AND DISABILITY DISCRIMINATION.......................38

POINT VII    DEFENDANTS ARE NOT ENTITLED TO LEGISLATIVE
             IMMUNITY...........................................................39

CONCLUSION.........................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Almonte v. City of Long Beach,
  478 F.3d 100 (2d Cir. 2007)..................................................... 39

Back v. Hastings On Hudson Union Free School District,
  365 F.3d 107 (2d Cir. 2004)................................................ 11, 30

Baldwin v. Hale,
  68 U.S. 223 (1863)................................................................. 14

Berns v. Civil Serv. Comm'n,
  537 F.2d 714 (2d Cir. 1976)............................................... 16, 26

Boddie v. Connecticut,
  401 U.S. 371 (1971).............................................................. 14

Brennan v. Straub,
  246 F. Supp. 2d 360 (S.D.N.Y. 2003) .............................. 14, 15, 16

Carlton v. Mystic Transp., Inc.,
  202 F.3d 129 (2d Cir 2000).................................................... 29

Cifarelli v. Village of Babylon,
  894 F. Supp. 614 (E.D.N.Y. 1995) ...................................... 14, 16

Cifra v. GE Co.,
  252 F.3d 205 (2d Cir. 2001)........................................... 33, 34, 35

Citizens Bank of Clearwater v. Hunt,
  927 F.2d 707 (2d Cir. 1991).................................................. 13

Matter of Connolly v. Carey,
  80 A.D.2d 936 (3d Dep't 1981) .............................................. 17

Matter of Crow v. Ambach,
  96 A.D.2d 642 (3d Dep't 1983) .............................................. 17

Matter of Cushion v. Gorski,
  174 A.D.2d 993 (4th Dep't 1991) ........................................... 18

Dace v. ACF Industries, Inc.,
    722 F.2d 374 (8th Cir. 1983) ........................................................ 20

Danzer v. Norden Systems, Inc.,
    151 F.3d 50 (2d Cir. 1998).......................................................... 11, 31

Epstein v. Kalvin-Miller Int'l, Inc.,
    21 F. Supp. 2d 400 (S.D.N.Y. 1998) ............................................. 35

Folkes v. Hushion,
    283 N.Y. 536 (1940) ..................................................................... 18

Gallo v. Prudential Residential Services, LLP,
    22 F.3d 1219 (2d Cir. 1994)........................................................... 12

Geromanos v. Columbia University,
    322 F. Supp.2d 420 (S.D.N.Y. 2004) ........................................... 33

Goss v. Lopez,
    419 U.S. 565 (1974)................................................................. 13, 16

Graham v. Long Island R.R.,
    230 F.3d 34 (2d Cir. 2000)................................................. 12, 22, 29

Grannis v. Ordean,
    234 U.S. 385 (1914)...................................................................... 14

Matter of Hartman v. Erie 1 BOCES Bd. of Educ.,
    204 A.D.2d 1037 (4th Dep't 1994) ............................................... 18

Hurlbert v. St. Mary's Health Care System, Inc.,
    439 F.3d 1286 (11th Cir. 2006) ............................................... 33, 35

Leberman v. John Blair & Co.,
    880 F.2d 1555 (2d Cir. 1989)........................................................ 12

Matter of McCanless v. Brieant,
    19 A.D.2d 736 ............................................................................... 18

Montana v. First Federal S. & L. of Rochester,
    869 F.2d 100 (2d Cir 1989).......................................................... 31

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950)..................................................... 13, 14, 16

*Paese v. Pilla,*
    59 A.D.2d 701 (2d Dep't 1977)........................................ 18

*Pigott v. Battle Ground Academy,*
    909 F.Supp.2d 949 (M.D.T.N. 2012).......................... 20, 25, 27

*Pontenza v. City of New York,*
    365 F.3d 165 (2d Cir. 2004)........................................... 35

*Reeves v. Sanderson Plumbing Prods.,*
    530 U.S. 133 (2000)..................................................... 26

*Richardson v. New York State Dept. of Corr. Ser.,*
    180 F.3d 426 (2d Cir. 1999)........................................... 34

*Rosen v. Thornburgh,*
    928 F.2d 528 (2d Cir. 1991)........................................... 12

*Matter of Rosenthal v. Gilroy,*
    208 A.D.2d 748 (2d Dep't. 1994)....................... 16, 17, 18, 20, 23

*Schering Corp. v. Pfizer Inc.,*
    189 F.3d 218 (2d Cir. 1999)........................................... 28

*Shields v. Dinga,*
    222 A.d.2d 816 (3d Dep't 1995)................................... 23, 24

*Sittler v. United States,*
    316 F.2d 312 (2d Cir. 1963)........................................... 13

*Matter of Smith v. MacMurray,*
    52 A.D.2d 637 (2d Dep't 1976)................................ 17, 18, 20

*Staub v. Proctor Hospital,*
    131 S. Ct. 1186, 179 L. Ed. 2d 144 (2011)........................ 30

*Stetson v. NYNEX Serv. Co.,*
    995 F.2d 355 (2d Cir. 1993)........................................... 39

<u>Tomassi v. Insignia Fin. Group, Inc.</u>,
    478 F.3d 111 (2d Cir. 2007)........................................................ 26

<u>Tyler v. Bethlehem Steel Corp.</u>,
    958 F.2d 1176 (2d Cir.), <u>cert. denied</u>, 121 L. Ed. 2d 46, 113 S. Ct.
    82 (1992) ................................................................................... 39

<u>United States v. Frost</u>,
    684 F.3d 963 (10th Cir. 2012) ............................................... 27, 28

<u>Matter of Vasquez v. Town Bd.</u>,
    72 A.D.2d 883 (3rd Dep't 1979).............................................. 17, 20

<u>Wood v. City of New York</u>,
    274 N.Y. 155 (1937) ................................................................. 17

<u>Matter of Young v. Supervisor of Town of Lloyd</u>,
    159 A.D.2d 828 (3d Dep't 1990).............................................. 18

<u>Zann Kwan v. Andalex Group LLC</u>,
    737 F.3d 834 (2d Cir. 2013)............................................. 20, 25, 26

**Statutes**

28 U.S.C. § 1291 ......................................................................... 2

29 U.S.C. 2615(a)(1) ................................................................. 32

29 U.S.C. § 2612(1)(D) ............................................................. 32

29 U.S.C. § 2614 (a)(I)(B) ........................................................ 32

42 U.S.C. § 1983 ........................................................... 1, 4, 13, 26

Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* .................. 1, 3, 9, 11, 35

Family Medical Leave Act, 29 U.S.C. § 2601, *et seq* ............ 1,3, 4, 9, 11, 32, 33, 35

New York Executive Law § 296, *et seq.* ................................................. 1

New York Town Law § 109(3) ................................................. 15

State Civil Service Law ............................................................ 6

State Human Rights Law ...................................................................1

United States Constitution, the Age Discrimination in Employment
   Act 29 U.S.C. § 621 *et seq.* ...................................................... 1, 26, 32

**Other Authorities**

Fourteenth Amendment.............................................................. 1, 4, 9

Fed. R. Evid. 803(2) ...................................................................... 27

Rule 801(d)(2)(D) ...................................................................... 28, 29

United States Constitution.......................................................... 1, 4, 9

## JURISDICTIONAL STATEMENT

This appeal arises from the decision and order of the Honorable Edgardo Ramos of the United States District Court, Southern District of New York (the "District Court"), dismissing the claims of Plaintiff-Appellant, Raymond C. Knox ("Plaintiff"), against Defendants-Appellees, Town of Southeast, Town Supervisor, Michael Rights, as well as Town Councilmen Robert Cullen and Dwight Yee, individually and in their official capacity.

This appeal concerns Mr. Knox's claims arising under 42 U.S.C. § 1983 pursuant to the Fourteenth Amendment to the United States Constitution, the Age Discrimination in Employment Act 29 U.S.C. § 621 *et seq.* ("ADEA"), the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* ("ADA"),  and  the New York State Human Rights Law, New York Executive Law § 296, *et seq.* (the "NYSHRL"). Federal jurisdiction arose under the Fourteenth Amendment to the United States Constitution, ADEA, the FMLA and the ADA.

By decision and order dated March 31, 2014 ("Order"), Judge Ramos granted Defendants' motion for summary judgment dismissing all of Plaintiff's claims (R. 220).  On March 31, 2014, the Clerk of the District Court entered a final judgment, disposing of Plaintiff's claims and dismissing this action in its entirety

(R. 220). On April 29, 2014 Mr. Knox filed and served his Notice of Appeal (R. 249).

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, which empowers the Circuit Court to review the final judgment of the District Court.

## STATEMENT OF ISSUES

1.      Did the District Court err in finding that Plaintiff was terminated on December 31, 2010 rather than on November 18, 2010 when the Town Board formally eliminated Plaintiff's position?

2.      Did the District Court err in finding that Plaintiff could have requested a pre-termination hearing even though he had no advanced notice of his job termination?

3.      Did the District Court err in finding that Plaintiff's subordinate did not take over his job functions despite that employee's admission that she performs all of the duties previously performed by Plaintiff?

4.      Did the District Court err in finding that Defendants' reasons for terminating Plaintiff, namely, budgetary constraints, were not pretextual, despite Defendants' admitted failure to consider that Plaintiff's two subordinates earned more than Plaintiff?

5.      Did the District Court err in finding that there was no issue of fact concerning Defendants' bad faith in terminating Plaintiff for the same reasons articulated in Issue number 4 above?

6.      Did the District Court misapply the Federal Rules of Evidence when it found that a statement made by a Town Councilman was not the admission of a party opponent even though the Town is a named Defendant?

7.      Did the District Court err in granting Defendants' summary judgment on Plaintiff's age discrimination claims despite evidence that Town Councilmen and the Town Supervisor held ageist beliefs, and all five employees terminated by the Town in 2010, including Plaintiff, were in an age protected group?

8.      Did the District Court err in failing to address Defendants' violation of the existing town vehicle use policy by preventing Plaintiff from accessing the subject vehicle when he was released from the Hospital, and Plaintiff's claim of adverse job action in response to his actual or perceived disability?

9.      Did the District Court err in determining there were no issues of fact concerning Plaintiff's FMLA and ADA claims?

# STATEMENT OF THE CASE

A.   <u>Nature Of The Case</u>

Plaintiff, Raymond Knox ("Plaintiff"), the former director of Parks and Recreation for the Town of Southeast filed this action and plead a § 1983 claim pursuant to the Fourteenth Amendment to the United States Constitution, alleging that Defendants violated his procedural and substantive due process rights.  Mr. Knox also alleges that he was discriminated against because of his age, disability and his decision to take a FMLA leave.

Plaintiff avers that Defendants violated his procedural due process rights when they failed to provide him with a hearing <u>prior</u> to the elimination of his civil service position as required by law.  Defendants admit that Plaintiff did not have any advance notice of being laid off prior to the elimination of his position. (R. 123-124).

Plaintiff also claims that Defendants violated his substantive due process rights by acting in bad faith when they voted to eliminate his position, purportedly for budgetary reasons, but allowed his higher paid subordinate, Patricia Bohrman, who did not have a Civil Service Law position, to take over Plaintiff's job functions.  (R. 141-142, 190-193, 205).

Plaintiff further alleges that he was discriminated against on the basis of his age when he was terminated as evidenced by a clearly ageist comment made by the

4

same Town Councilman who informed Plaintiff that he was being terminated.  In addition, the Town Supervisor and Town Councilmen held ageist beliefs, and all five employees terminated the same time of Plaintiff's termination were in an age protected group.  (R. 135-136, 189, 213-214).

Plaintiff also suffered adverse job actions and was discriminated against because he took a leave of absence for his disability.  Immediately after Plaintiff returned from his medical leave -- and released from the hospital after being treated concerning his heart condition -- Defendants violated the existing vehicle use policy for almost two months until they changed the policy, and terminated Plaintiff.  Namely, Defendants would not permit Plaintiff to park the subject town recreation vehicle at his residence and prevented him from accessing the vehicle altogether.  (R. 133-134, 174-177, 186-188,192-196, 198).

By Decision and Order dated March 31, 2014 ("Order"), Judge Ramos granted Defendants' motion for summary judgment on all of Plaintiff's claims.

B.    Factual Background

Raymond Knox, Sr. ("Plaintiff") became Director of the Parks and Recreation Department ("Director") for the Town of Southeast ("the Town") in 1988, after being appointed in accordance with the protocol and procedures set

forth in the New York State Civil Service Law.  (R. 147).[1]  At the beginning of his

tenure as Director, Mr. Knox was the sole full time employee of this department.

(R. 148, 165-166).  Subsequently, the Town hired two additional staff members,

who later became Recreation Leaders, namely, Patricia Bohrman and Maryann

Gallipani.  (R. 165-167).

As Director of Parks and Recreation, Plaintiff was entitled to bring the

Town's recreation vehicle home under the 1999 vehicle use policy.  (R. 194-195).

Ms. Bohrman and Ms. Gallipani would often come to Mr. Knox's residence to use

the town vehicle and "it was never an issue." (R. 171).  Neither Ms. Bohrman nor

Ms. Gallipani ever complained of not having access to the town vehicle, even

when Plaintiff was in the hospital. (R. 127).

In 2000, Plaintiff suffered a heart attack, underwent a triple bypass surgery

and had a defibrillator implanted in his chest.  (R. 154).  In February 2010, Plaintiff

underwent a scheduled surgery to remove and replace the defibrillator in his chest,

and suffered a bacterial infection in his blood, which caused Plaintiff to be

hospitalized again for parts of May, June, and July of 2010.  (R. 154).

In July 2010, while Plaintiff was still in the hospital, Mr. Cullen and Ms.

Bohrman went to Plaintiff's house and retrieved the keys and Town's recreation

vehicle.  (R. 126, 172).  Plaintiff returned to work on July 7, 2010, but he was

---

[1] Plaintiff's employment with the Town commenced in 1985 as Park Director and Assistant to the
Supervisor of Recreation.  (R. 146).

denied reasonable access to the town vehicle. (R. 174-175; 194-196). Plaintiff was also denied the privilege of taking said vehicle home or use of the vehicle for recreation-related events on weekends and after office hours, which was a brazen violation of the vehicle usage policy then in force between July 7, 2010 and August 26, 2010. Id.

During the August 26, 2010 Town Board meeting, Supervisor Rights made an overt reference to Plaintiff's medical condition, and then, during that same meeting, the board proceeded to change the vehicle use policy which revoked Plaintiff's privilege to bring the town vehicle home.[2] (R. 198, 209-2012). From that date forward, the town recreation vehicle had to be parked at the Highway Department. Id. During this same meeting, Plaintiff complained to the board that he was being "discriminated against and singled out." (R. 152-153).[3]

Between August 26, 2010 and November 2010, Plaintiff made several complaints concerning Defendants' failure to establish a protocol for him to access the vehicle from the highway department (i.e. pick up and drop off the keys), and that he did not have reasonable access to the vehicle, especially on the weekends and after business hours. (R. 131, 174-177, 186-188). Yet, Plaintiff's complaints were never addressed, much less remedied. Id.

---

[2] Defendant Cullen admitted that Plaintiff's heart condition was common knowledge among the Town Board members. (R. 126)

[3] It should be noted that Plaintiff's comments were made during the Executive Session of the August 26, 2010 Board meeting, and that the Executive session of the Town Board Meetings is not taped.

7

In addition, Plaintiff made several complaints to the Town Board, from September 2010 until he was terminated, that he was not being reimbursed for the mileage he incurred for using his private vehicle as a direct result of not having access to the town vehicle. (R.133-134). Remarkably, Ms. Bohrman and Ms. Gallipani were promptly reimbursed for the mileage vouchers that they submitted after August 26, 2010. (R. 192).

On November 4, 2010, Mr. Knox commented during the board meeting that there was no reason to terminate any of the full time employees of the Town's Recreation Department, because the Department's revenue exceeded the Department's expenses. (R. 199-200).

On November 18, 2010, defendant Robert Cullen, Councilman Roger Gross, and Mr. Willis Stephens entered the Recreation Department offices and informed Plaintiff that he was being terminated for economic reasons. (R. 180-183). On the way out of the office, Mr. Gross told Ms. Bohrman that they had laid Plaintiff off because he "already had a *retirement* coming to him." (R. 183, 192).

At all times relevant herein, Ruth Mazzei, who was then the Town Clerk, was also subjected to significant ageist remarks and harassment including, without limitation, emails from Councilman, Dwight Yee, that made discriminatory comments toward Ms. Mazzei about her age and specifically about her being older than 70. (R. 135-136, 213-214). Defendant Cullen was copied on said emails. Id.

8

These ageist remarks were made in connection with Yee's perception of Mazzei as being unable to perform her job duties competently due to her age. Id. Therefore, these remarks cannot be regarded as stray comments.

On the evening of November 18, 2010, the same day that Plaintiff was notified of his termination, the Town Board officially eliminated Plaintiff's position. (R. 178). Today, Ms. Bohrman performs all of the duties previously performed by Plaintiff. (R.141-142).

Notably, Plaintiff had consistently earned significantly less money than Ms. Bohrman or Ms. Gallipani at all times relevant herein. (R.205, 190). In addition, the Town made significant pension contributions to Ms. Bohrman and Ms. Gallipani, a benefit which was not extended to Plaintiff. (R. 193). Finally, Plaintiff had been employed by the Town longer than Ms. Bohrman or Ms. Gallipani and was therefore the most senior person. Id.

## SUMMARY OF ARGUMENT

Plaintiff-Appellant respectfully submits that the District Court committed reversible error when it granted Defendants' motion for summary judgment and dismissed Plaintiff's procedural and substantive due process claims pursuant to the 14th Amendment to the United States Constitution, Age discrimination claims, FMLA claim and disability discrimination claims under the ADA.

9

Plaintiff has a meritorious procedural due process claim because he was neither provided with a pre-termination hearing nor a meaningful opportunity to request one.  Namely, Plaintiff was told he was being terminated on the same day of his actual termination.

The District Court, likewise, erred in finding that there was no issue of fact concerning Defendants' bad faith in terminating Plaintiff for pretextual reasons. Defendants assert that they terminated Plaintiff for budgetary reasons, but did not even consider the salaries and overtime of Plaintiff's two subordinates, who earned more than Plaintiff at the time of his termination.  This is antithetical to Defendants' stated reason because, all factors being equal, the highest paid and/or least senior person would have had to be terminated -- if the job elimination was genuinely motivated to reduce the Town's budget.

Plaintiff was not only the least paid when compared to Bohrman and Gallipani, but also the only person whose qualifications met the requisite criteria of the Director of Parks and Recreation, including a 4 year bachelor degree.  This is very relevant since Bohrman testified that she performs all Plaintiff's duties.

Plaintiff has also established a viable claim for age discrimination as demonstrated by Defendants' ageist beliefs.  Furthermore, all five employees terminated by the Town, at the same time Plaintiff was terminated, were in an age

protected group, and Defendants' stated reason for terminating Plaintiff was pretextual.

Finally, Plaintiff has established a viable claim under the FMLA and ADA to the extent that he suffered an adverse job action and was discriminated against following his medical leave of absence. Namely, immediately after Plaintiff was released from the hospital and returned to work, Defendants prevented Plaintiff from using the town vehicle for the remainder of his tenure and terminated him within two months of his return.

## ARGUMENT

## POINT I

### STANDARD OF REVIEW

A.   The District Court's Grant Of Summary Judgment
     Is Subject To *De Novo* Review

Appellate courts review summary judgment decisions *de novo*, applying the same standard to which the District Court was bound. Back v. Hastings On Hudson Union Free School District, 365 F.3d 107, 122 (2d Cir. 2004).

B.   Standard Of Review On A Motion For Summary Judgment

When deciding whether to grant summary judgment in a discrimination case, the court must be extra cautious where, as here, intent is at issue. In Danzer v. Norden Systems, Inc., 151 F.3d 50, 57 (2d Cir. 1998), the Second Circuit

recognized that defendants will rarely admit to having said or done what is alleged. Consequently, credibility issues should be resolved in favor of the non-movant.

In Gallo v. Prudential Residential Services, LLP, 22 F.3d 1219 (2d Cir. 1994), the Second Circuit stated:

> Because writings directly supporting a claim of intentional discrimination are rarely, if ever found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.

22 F.3d at 1224. Accord, Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) (where defendant's intent and state of mind are placed at issue, summary judgment is ordinarily inappropriate); See also, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (plaintiff's burden to survive a summary judgment motion is a minimal one).

On a motion for summary judgment, a District Court must view the evidence in the light most favorable to the non-moving party and resolve all competing inferences in favor of the non-moving party. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Moreover, "[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." Leberman v. John Blair & Co., 880 F.2d 1555, 1560 (2d Cir. 1989) (internal quotation marks and citation omitted); see

also <u>Citizens Bank of Clearwater v. Hunt</u>, 927 F.2d 707, 711 (2d Cir. 1991).  The

need for a full exposition of facts is profound under such circumstances since

determining a man's state of mind is "an awesome problem," capable of resolution

only by reference to a panoply of subjective factors.  <u>See</u> <u>Sittler v. United States</u>,

316 F.2d 312, 325 (2d Cir. 1963).

**POINT II**

**<u>PLAINTIFF WAS DENIED DUE PROCESS</u>**

As a threshold matter, the district court correctly held that "Plaintiff had a

protected property interest in his continued employment as a 'permanent

competitive class employee.'"  (R. 224)

A.    Plaintiff Was Denied Procedural Due Process Because He
<u>Had No Opportunity To Request A Pre-Termination Hearing</u>

An employee has a viable § 1983 claim for a violation of his procedural due

process rights when that employee is not afforded a pre-termination hearing.  <u>Goss</u>

<u>v. Lopez</u>, 419 U.S. 565, 579 (1974) ("The fundamental requisite of due process of

law is the opportunity to be heard").  An essential principle of due process is that a

deprivation of life, liberty, or property "be preceded by notice and opportunity for

hearing appropriate to the nature of the case." <u>Mullane v. Central Hanover Bank &</u>

<u>Trust Co.</u>, 339 U.S. 306, 313 (1950). "The root requirement" of the Due Process

Clause as being "that an individual be given an opportunity for a hearing *before* he

13

is deprived of any significant property interest." <u>Boddie v. Connecticut</u>, 401 U.S. 371, 379 (1971).

An employee will not waive his procedural due process right to a pre termination by failing to request one if the employee was not afforded any meaningful advance notice.  <u>See</u> <u>Cifarelli v. Village of Babylon</u>, 894 F. Supp. 614 (E.D.N.Y. 1995)  ("it is apparent to the Court that Cifarelli was not afforded sufficient time to make such a request [for a pretermination hearing])" <u>quoting</u> <u>Goss v. Lopez</u>, 419 U.S. 565, 579 (1974) ("'The fundamental requisite of due process of law is the opportunity to be heard,' <u>Grannis v. Ordean</u>, 234 U.S. 385, 394 (1914), a right that 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest,' <u>Mullane v. Central Hanover Trust Co.</u>, 339 U.S. 306, 314 (1950)."); <u>Baldwin v. Hale</u>, 68 U.S. 223, 233, (1863) ("Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."); <u>Brennan v. Straub</u>, 246 F. Supp. 2d 360 (S.D.N.Y. 2003) (same).

Mr. Knox was not notified that he would be terminated until the morning of November 18, 2010, and the Town Board voted to eliminate his position later that day.  In fact, Defendant Cullen admitted during his deposition that Mr. Knox was not afforded any meaningful notice prior to his termination:

> Q.    So based on the testimony that you
>        just gave, *is it fair and accurate to say there*

14

> *was no advance notice between the time you told*
> *[Plaintiff] and the time the decision was officially made*
> *by the Town Board to lay off Mr. Knox?*

A.   *That is correct.*

(R. 124) (emphasis added).

In other words, the instant case and <u>Brennan v. Straub</u>, 246 F. Supp. 2d 360 (S.D.N.Y. 2003), are analogous.  In the instant case and in <u>Brennan</u>, Plaintiff's due process rights were violated because Defendants failed to provide Plaintiff with a pre-termination hearing.  In addition, Mr. Knox was never provided with an exit interview as provided for in the employee handbook.  (R. 190-208).

Despite Cullen's admission "the night it was adopted it was official," (R. 123) the District Court held that Plaintiff was not terminated on November 18, 2010, but was instead terminated on December 31, 2010.  Therefore, the District Court reasoned, Plaintiff could have asked for a pre-termination interview between November 18, 2010 and December 31, 2010. (R. 123-124).  However, this finding is contrary to Defendants' plain admission that the decision to terminate Plaintiff had already been made as of November 18, 2010. (R. 123).

New York Town Law § 109(3) further provides in pertinent part "[u]pon the adoption of the resolution required by this section the amounts proposed to be appropriated shall thereupon be appropriated."  Therefore, under the applicable law, the decision to appropriate funds for Plaintiff's position, or not, was effective

on the date of the resolution, namely, November 18, 2010, not on December 31, 2010.

Consequently, if Plaintiff had requested a hearing regarding his termination <u>after</u> November 18, 2010, such a hearing would have been a *post*-termination hearing seeking to reverse a decision already made by the Board's November 18, 2010 resolution.

Therefore, Plaintiff's procedural due process was clearly violated to the extent that Mr. Knox had no opportunity to request a pre-termination hearing since the notice and the termination itself occurred on the same day.  <u>Cifarelli v. Village of Babylon</u>, 894 F. Supp. 614 (E.D.N.Y. 1995); <u>Brennan v. Straub</u>, 246 F. Supp. 2d 360 (S.D.N.Y. 2003); <u>See</u> <u>also</u> <u>Goss v. Lopez</u>, 419 U.S. 565, 579 (1974); <u>Mullane v. Central Hanover Trust Co.</u>, 339 U.S. 306, 314 (1950).").

B.    <u>Plaintiff Was Denied Substantive Due Process</u>

A public employer violates a Plaintiff's due process rights when that employer abolishes a civil service position employee in bad faith. <u>Berns v. Civil Serv. Comm'n,</u> 537 F.2d 714, 716 (2d Cir. 1976) (<u>quoting</u> <u>Biship v. Wood</u>, 426 U.S. 341, 345 48 L. Ed. 2d 684, 96 S. Ct. 2074 (1976); <u>Matter of Rosenthal v. Gilroy</u>, 208 A.D.2d 748, 748-749, 617 NYS2d 509 (2d Dep't. 1994) (citations omitted).

A civil service employee can demonstrate that a public employer has terminated him or her in bad faith when an employee performs "substantially the same duties" as the discharged civil service employee:

> *A public employer, however, may not abolish a job position as a subterfuge to avoid the statutory protection afforded to civil servants (*see, Wood v. City of New York, *274 N.Y. 155). It is also well-settled that one who challenges the validity of such an act has the burden of proving that the employer did not act in good faith in abolishing the position (*see, Matter of Crow v. Ambach, *96 A.D.2d 642; Matter of Connolly v. Carey, 80 A.D.2d 936). Bad faith may be demonstrated by evidence that a newly hired person performed substantially the same duties as the discharged employee (*see, Matter of Vasquez v. Town Bd., *72 AD2d 883; Matter of Smith v. MacMurray, 52 AD2d 637).*

Matter of Rosenthal v. Gilroy, 208 A.D.2d 748, 748-749, 617 N.Y.S.2d 509 (2d Dep't. 1994) (emphasis added); Matter of Vasquez v. Town Bd. of the Town Of Waterford, 72 A.D.2d 883 (3rd Dep't 1979); Matter of Smith v. MacMurray, 52 A.D.2d 637, 368 (2d Dep't 1976) (holding that petitioners' positions were not effectively abolished when "*respondents abolished petitioners' position and separated them from the payroll. Since that date, the less qualified and more recently employed trainees [a class of employee] have performed petitioners' duties.*").

In fact, New York courts have found that a public employer has failed to effectively abolish a civil service position when an employee, not appointed to the same civil service title as the terminated employee, performs the same duties that

the terminated civil service employee performed.  Matter of Smith v. MacMurray

52 A.D.2d 637 (2d Dep't 1976); Folkes v. Hushion, 283 N.Y. 536, 540 (1940):

> *A position is not effectively abolished where a person not appointed in accordance with the provisions of the Civil Service Law (Cons. Laws, ch. 7) is employed to perform the duties formerly performed by the holder of the position* (emphasis added).

In addition, New York Courts have repeatedly held that a full hearing is

appropriate when there is a triable issue of fact regarding the bad faith:

> *The courts of this State have continually held that when there exists a triable issue of fact with regard to bad faith, a full hearing must be held* (see, Matter of  McCanless v. Brieant, 19 A.D.2d 736; Paese v. Pilla, 59 A.D.2d 701; Matter of Hartman v. Erie 1 BOCES Bd. of Educ., 204 A.D.2d 1037; Matter of Young v. Supervisor of Town of Lloyd, 159 A.D.2d 828, 829; Matter of Cushion v. Gorski, 174 A.D.2d 993) (emphasis added).

Matter of Rosenthal v. Gilroy, 208 A.D.2d 748, 748-749, 617 N.Y.S.2d 509 (2d

Dep't. 1994); Hartman v. Erie 1 BOCES Bd. of Educ., 204 A.D.2d 1037 (4th Dep't

1994) ("Petitioner presented evidence that his former duties were now being

substantially performed by a person who was not appointed in accordance with the

provisions of the Civil Service Law.  That evidence presented a triable issue of fact

whether petitioner's position was abolished in good faith").

It is undisputed that Patricia Bohrman, an employee not appointed in

accordance with the New York Civil Service Laws to Director of Recreation,

18

performs all of the duties previously performed by the Director of Recreation.[4]  (R. 141-142, 201-203).  By definition, a Recreation Leader: "Implements programs that have been planned and approved by the Director of Parks & Recreation." (R. 201-203).

Ms. Bohrman plainly admits:

Q.     And so I guess my question is, was there something that Mr. Knox did that you don't do today?

A.     *I do every -- no.  There was nothing that he did that I don't do.*

(R. 142) (emphasis added).

It is important to note that Plaintiff is on the preferred eligible list for the Director of Parks and Recreation for the Town of Southeast -- meaning that Plaintiff would have to be re-hired if that position were to be reinstated. (R.204).

Therefore, Defendants' bad faith in terminating Plaintiff is demonstrated by the undisputed fact that they have Patricia Bohrman performing all of the duties previously performed by Plaintiff.  (R. 141-142).  In so doing, Defendants did not eliminate the job duties or functions of the Director of Parks and Recreation, but

---

[4] The District Court points out that Ms. Bohrman is a civil service employee.  However, this point is without legal significance because Ms. Bohrman has never been appointed to be the Director of Recreation, and it would frustrate the Civil Service Law if lower level civil service employees (i.e. typist), could replace higher level civil service employees (i.e. Deputy Clerk).

19

simply delegated them to Patricia Bohrman to avoid the civil service procedural and substantive safeguards accorded to employees like Knox.

Stated differently, Defendants discontinued the nomenclature of "Director of Parks and Recreation," and Ms. Bohrman became the de facto Director. Consequently, for this reason alone, Plaintiff meets the bad faith threshold enunciated in Matter of Rosenthal v. Gilroy, 208 A.D.2d 748, 748-749, 617 NYS2d 509 (2d Dep't. 1994); Matter Of Vasquez v. Town Bd. of the Town Of Waterford, 72 A.D.2d 883 (3rd Dep't 1979); and Matter of Smith v. MacMurray 52 A.D.2d 637 (2d Dep't 1976) ("Petitioner presented evidence that his former duties were now being substantially performed by a person who was not appointed in accordance with the provisions of the Civil Service Law. That evidence presented a triable issue of fact whether petitioner's position was abolished in good faith") (citations omitted).

C.    Defendants' Stated Reasons For Eliminating Plaintiff's Civil Service Position Is Pretextual And Further Evidence of Bad Faith

Very recently this Court stated when there are "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action . . . a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 846 (2d Cir. 2013); see Dace v. ACF Industries, Inc., 722 F.2d 374, 379 (8th Cir. 1983) (The fact that Plaintiff received a favorable

20

performance review just prior to his termination was evidence of pretext); Pigott v. Battle Ground Academy, 909 F.Supp.2d 949, 963 (M.D.T.N. 2012) ("'By showing that the defendants' justification for firing him changed over time, [plaintiff] shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination.") (citations omitted).

Defendants contend that they terminated Plaintiff and eliminated his position "due to budgetary concerns and spending cuts within the Town." (R. 84). However, Plaintiff was the lowest paid permanent employee of the Recreational Department.  In 2009, Plaintiff made $4,587.77 less than one Recreation Leader, and $16,964.70 less than the other Recreation Leader.  (R. 190, 205).  Furthermore, it was reported in 2008, that Ms. Bohrman made $77,700.77-- $17,247.77 more than Raymond Knox who earned only $60,453 in 2008. (R. 207).

In addition, the Town made substantive contributions to Ms. Bohrman and Ms. Gallipani's pensions, but no such perquisite was extended to Plaintiff. (R. 168).  Consequently, Defendants' professed reasons of economic efficiency underlying Plaintiff's termination are seriously belied, which raises a strong inference of pretext which further supports Plaintiff's argument that his civil service employment was terminated in bad faith.

Mr. Cullen's deposition testimony flies in the face of Defendants' stated reasons concerning Plaintiff's termination to the extent that the Town Board did not

even *consider* the respective salaries of Plaintiff and the two Recreation Leaders at

the time in question, much less assess the cost benefit analysis in laying off

Plaintiff rather than one of the two Recreation Leaders.

> Q.   Now, aside from the rationale of
> not needing a supervisor, *what consideration, if*
> *any, was given to the respective salaries of*
> *these people at the time of the budget process?*

> A.   *I don't think that was a*
> *consideration at the time.*  We thought it would
> run smoother if we had two equal members with the
> same job title.

(R. 120-121).

In addition, Defendants' bad faith can also be inferred from the fact that

Plaintiff was the <u>only</u> employee of the Recreation Department who possessed a

Master's degree and was employed by the Town for more than <u>25 years</u>. (R. 145,

157).  This is relevant because neither Ms. Bohrman nor Ms. Gallipani possesses a

four year college degree, which is a minimum qualification for the Director of

Parks and Recreation position. (R. 190, 201-203).

Since the functions of the Director were not eliminated but were admittedly

assumed by Ms. Bohrman (R. 142), this raises an inference that Plaintiff -- the <u>only</u>

person who met the criteria of Director -- was the most suitable individual to keep

fulfilling those functions, especially since he was also the most senior and the least

paid individual.  <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000) (on a

motion for summary judgment, a District Court must view the evidence in the light most favorable to the non-moving party and resolve all competing inferences in favor of the non-moving party.)

Defendants also admit that there were no legal impediments in terminating either Ms. Bohrman or Ms. Gallipani. (R. 122-123). In fact, Mr. Knox had previously been in the past years the only full time employee of the Recreation and Parks Department. (R. 148).

It is important for the Court to note that Plaintiff need <u>not</u> demonstrate any discriminatory animus to proffer a prima facie case that his civil service employment was terminated in bad faith and, therefore, in violation of his substantive and procedural constitutional rights. <u>Matter of Rosenthal v. Gilroy</u>, 208 A.D.2d 748, 748-749, 617 N.Y.S.2d 509 (2d Dep't 1994). Nevertheless, Defendants' termination of Plaintiff was permeated with discriminatory animus as further discussed below. For example, on November 18, 2014, Councilman Gross, told Ms. Bohrman that Mr. Knox was being terminated because "*he already has a retirement coming to him.*" (R. 183).[5]

The court below cites <u>Shields v. Dinga</u>, 222 A.d.2d 816, 818 (3d Dep't 1995) and <u>Piekilniak v. Axelrod</u>, 92, A.D.2d 968, 969-70 (3d Dep't 1983) for the proposition that when duties are assumed by another employee "in itself, is not

---

[5] As stated below this statement is clearly admissible.

proof of bad faith." (R. 233). Each of these cases are distinguishable from the instant case. Namely, in <u>Shields</u>, the Broome County Soil & Water Conservation District's funding from the County was reduced from $150,000 to $10,000 between 1994 and 1995, therefore, the District abolished the District Manager position, reassigned his managerial duties to the board and his responsibilities under the contracts with the Parks Department were transferred to the Parks Department, not to one specific person.

In <u>Piekilniak</u>, petitioner's duties were carried out by other existing employee*s*, not one person, and there is no analysis of whether petitioner earned less than the employees who took over petitioner's duties, or whether there was any evidence that that petitioner's termination was pretextual. Therefore, these cases provide no meaningful guidance and are of dubious applicability.

The Court below further reasons that "Ms. Bohrman took on *some* duties and responsibilities handled by Plaintiff, and there is no evidence in the record to suggest that either Ms. Bohrman or Ms. Gallipani formally replaced Plaintiff as 'Director. (emphasis added)'" This finding is flatly contradicted by Ms. Bohrman's testimony that *"There was nothing that he did that I don't do."*(R. 142). Therefore, it is clear that despite the fact that Ms. Bohrman's title position has not changed, Ms. Bohrman has became the de facto Director of the Recreation Department in violation of Plaintiff's substantive due process rights.

24

The District Court further reasoned that it is "immaterial whether they [Ms. Bohrman and Ms. Gallipani] had four-year college degrees," despite the fact that a four year college degree is a minimum qualification for the Director of Recreation Department. (R. 201, 234). If the functions of Director purportedly require certain qualifications, and a Recreational Leader assumes those functions, as Bohrman did, the lack of a college degree is very material. Specifically, this is probative of Defendants' bad faith because Plaintiff was ostensibly the most qualified person to keep fulfilling those functions that were subsequently delegated to Ms. Bohrman.

In addition, the District Court endorses Defendants' argument that they terminated Plaintiff in the interest of the efficiency of the department by reducing "redundancy." First, this is contrary to Defendants' stated reason for terminating Plaintiff's position which was allegedly eliminated "[d]ue to budgetary concerns and spending cuts within the Town," and is clear evidence of pretextual termination. (R. 84); Pigott v. Battle Ground Academy, 909 F.Supp.2d 949, 963 (M.D.T.N. 2012) (finding pretext because defendants' justification for firing plaintiff changed over time); accord, Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 846 (2d Cir. 2013). Second, it defies logic that it would be less redundant to terminate the Director of Recreation, and have two recreation leaders, of equal authority, having to report to the Town Board. (R. 122).

25

Accordingly, Plaintiff has offered credible evidence which raises an inference that Defendants' stated reasons for terminating Plaintiff are false and pretextual. Therefore, Plaintiff has raised a genuine issue of fact concerning his § 1983 claim for Defendants' violation of his substantive due process rights. Berns v. Civil Serv. Comm'n, 537 F.2d 714, 716 (2d Cir. 1976) (quoting Biship v. Wood, 426 U.S. 341, 345 48 L. Ed. 2d 684, 96 S. Ct. 2074 (1976).

## POINT III

## PLAINITFF HAS A VIABLE CLAIM UNDER THE ADEA AS DEMONSTRATED BY THE AGEIST BELIEFS HELD BY THE TOWN DECISION MAKERS

As a threshold matter, the Supreme Court has held that "a plaintiffs prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148 (2000).

This Court has held that ageist remarks by a supervisor may be used to infer that supervisor's age discriminatory views. Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007) ("Considering Stadmeyer's remarks in the context of all the evidence, they were legally sufficient to sustain a reasonable inference that he was motivated by age discrimination in terminating Tomassi.")

In addition, this Court recently held that when there are "weaknesses" or "contradictions" in an employer's stated reason termination a reasonable juror may conclude that the employer's stated reason for termination are pretextual. <u>Zann Kwan v. Andalex Group LLC</u>, 737 F.3d 834, 846 (2d Cir. 2013) ( "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action" permit a reasonable juror to conclude that the explanations were a pretext for a prohibited reason.); <u>see also</u> <u>Pigott v. Battle Ground Academy</u>, 909 F.Supp.2d 949, 963 (M.D.T.N. 2012) ("'By showing that the defendants' justification for firing him changed over time, [plaintiff] shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination.") (citations omitted).

The day Plaintiff was advised of his termination, Ms. Bohrman told Plaintiff -- while she was crying -- that Mr. Gross had told her that Defendants terminated Plaintiff because *"he already has a retirement coming to him."* (R. 183) (emphasis added). This statement is admissible evidence as an excited utterance, and admission of a party opponent. Fed. R. Evid. 803(2); <u>United States v. Frost</u>, 684 F.3d 963, 973 (10th Cir. 2012) (Deponent's out of court statement made while the deponent was still crying was admissible as an excited utterance).

27

The District Court held that Councilman Gross's statement to Ms. Bohrman is not admissible evidence because Ms. Bohrman's statement was not an excited utterance, and that neither statement was the admission of a party opponent because neither Mr. Gross nor Ms. Bohrman are individually named defendants in this action.  (R. 243).

The District Court cited no supporting case law on this point.  Cf  United States v. Frost, 684 F.3d 963 , 973 (10th Cir. 2012) (Deponent's out of court statement made while the deponent *was still crying was admissible as an excited utterance*) (citations omitted).  Second, the Court erred in concluding the statement was not the admission of a party opponent.  It is undisputed that at the time the statement was made Mr. Gross was a member of the Town Board, and therefore, it was within the scope of his duties to determine whether to eliminate Plaintiff's position, which he voted to do.

Therefore, it is clear that Mr. Gross's statement was the admission of a party opponent.  Schering Corp. v. Pfizer Inc., 189 F.3d 218, 239 (2d Cir. 1999) ("Because the statements in the Gengler Analysis were made "by [a Pfizer] agent or servant concerning a matter within the scope of the . . . employment, made during the existence of the relationship," they qualify as party admissions under Rule 801(d)(2)(D).") .

In addition, Defendants admit that there were ageist discriminatory emails sent by board members to other Town employees:

A.  I believe there was an e-mail that
*Councilman Yee sent to Miss Mazzei where I was*
*cc'd on it basically making fun of her because*
*she was, I forgot the name because it's somebody*
*who's in their '70s, whatever the name is for*
*somebody who's in their '70s,* and there was an
e-mail from Councilman Yee to Ruth Mazzi,
M-a-z-z-i [sic].

Q.  Do you recall the substance of that
e-mail?

A.  He -- I guess he was speaking about
her *job qualifications and ability to perform her*
*job because of her age.*

(R. 135-136) (emphasis added).

In addition to this email, Town Supervisor Rights, and Town Councilman Yee made comments and sent several other vicious emails to Town Clerk Ruth Mazzei that clearly demonstrate their ageist animus.  (R. 213-214).  In one such email, Mr. Rights wrote "isn't it past time for you to retire?" (R. 213).  As a result, Ms. Mazzei made several complaints about the ageist harassment and discrimination to which she was subjected.  However, these complaints fell on deaf ears.  (R. 213-214).  As a result of this ageist harassment, Ms. Mazzei retired in 2011 after serving as the Town Clerk for <u>twenty</u> consecutive years.  <u>Id</u>.

29

The District Court found that these remarks and the ageist harassment that Ms. Mazzei suffered were "isolated, stray remarks." (R. 245-246). First, these comments go far beyond isolated, stray remarks and are in fact direct evidence that Councilman Yee and Supervisor Rights hold ageist animus. Carlton v. Mystic Transp., Inc., 202 F. 3d 129, 136 (2d Cir 2000) (a statement that Plaintiff should retire supported Plaintiff's *prima facia* case); see also Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (on a motion for summary judgment, a District Court must view the evidence in the light most favorable to the non-moving party and resolve all competing inferences in favor of the non-moving party.).

Second, the fact that Councilman Yee copied Councilman Cullen on this email suggests that Councilman Yee believed that Councilman Cullen condoned or otherwise shared his ageist animus or prejudice against individuals of a certain age. (R. 135-136, 193, 213-214). Third, the District Court importantly omitted the fact that Mr. Knox is six years older than Ms. Mazzei and that this harassment took place during the same time period. (R.189, 193, 213). Fourth, this evidence is clearly relevant regarding the issue of age discrimination under the "cat's paw theory." See Back v. Hastings on Hudson Union Free Sch. District, 365 F.3d 107, 126 (2d Cir. 2004); Staub v. Proctor Hospital, 131 S. Ct. 1186, 179 L. Ed. 2d 144 (2011).

30

Both this Court and the Supreme Court have held that the impermissible bias of a participant in the decision-making process may taint the process and may result in employer liability. See Back v. Hastings on Hudson Union Free Sch. District, 365 F.3d 107, 126 (2d Cir. 2004) (supervisor's views of Plaintiff, even though those supervisors were not the decision makers tainted the decision-making process, and therefore, the employer may be liable); Staub v. Proctor Hospital, 131 S. Ct. 1186, 1192, 179 L. Ed. 2d 144 (2011) ("The decision maker's exercise of judgment is *also* a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes. Nor can the ultimate decision maker's judgment be deemed a superseding cause of the harm.") (citations omitted).

Therefore, the District court erred in dismissing Plaintiff's evidence regarding the direct age discrimination that she suffered from Supervisor Rights and Councilman Dwight Yee. Both Mr. Yee and Mr. Rights were involved in the decision making process to terminate Mr. Knox.

Additionally, an inference of age discrimination may be shown through "direct, statistical or circumstantial evidence." Montana v. First Federal S. & L. of Rochester, 869 F.2d 100, 104 (2d Cir 1989).

Here, all five employees who were terminated in 2010, and all four employees terminated in 2011 were in an age protected group. (R.189).

31

Importantly, Plaintiff was the oldest employee of the Recreation Department. Id. The District Court merely addressed this issue in its 19th footnote, which omits the evidentiary record cited by Plaintiff, and makes an impermissible credibility finding against Mr. Knox. See Danzer v. Norden Systems, Inc., 151 F. 3d 50, 57 (2d Cir. 1998 ( "To hold, as defendants ask us to do, that the non movant's allegations of fact are insufficient (because "self-serving") to fend off summary judgment would be to thrust the courts — at an inappropriate stage — into an adjudication of the merits.") (R. 246).

For the reasons stated above, the District Court erred in finding "that Plaintiff has failed to set forth any *undisputed* facts from which the inference can be drawn that Defendants discriminated against him because of his age . . ." (R. 246-247) (emphasis added).

Therefore, the District Court erred in dismissing Mr. Knox's ADEA claim on Defendants' summary judgment motion.

## POINT IV

## PLAINTIFF HAS ESTABLISHED A VIABLE CLAIM UNDER THE FMLA

The Family Medical Leave Act entitles an eligible employee to take up to twelve weeks of unpaid leave in a twelve month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(D). At the end of the leave, the

employee must be restored to the same position or "restored to an equivalent position with the equivalent employment benefits, pay *and other terms and conditions of employment*." 29 U.S.C. § 2614 (a)(I)(B) (emphasis added).

To make out a *prima facie* case on a claim for interference with FMLA, under 29 U.S.C. 2615(a)(1), a plaintiff must establish five elements: 1) that she is an eligible employee under the FMLA; 2) that defendant is an employer as defined in FMLA; 3) that she was entitled to a leave under FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied a right to which she was entitled under FMLA. Geromanos v. Columbia University, 322 F. Supp.2d 420 (S.D.N.Y. 2004).

It is undisputed that Plaintiff complied with elements 1 through 4 of the FMLA above. (R. 241). Plaintiff respectfully submits that Defendants took two adverse job actions against Plaintiff: first, they denied him reasonable access to the town vehicle; second, they terminated him.

A causal connection between Plaintiff's FMLA leave and Defendants' adverse employment action can be established through the temporal proximity of the adverse job action and the FMLA leave. See Cifra v. GE Co., 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."); Hurlbert v. St. Mary's Health Care

33

System, Inc., 439 F.3d 1286 (11th Cir. 2006) (Reversing the District Court's

decision granting summary judgment on Plaintiff's FMLA claim based on the

temporal proximity between the Plaintiff's FLMA leave and Plaintiff's termination

coupled with Defendants' deviation of its employment procedures).

First, Defendants took Plaintiff's keys to the town vehicle while Plaintiff

was still in the hospital (R. 126, 191). Then, after Plaintiff returned to work,

Defendants prevented Plaintiff from reasonably accessing the town vehicle, and

refused to let Plaintiff park the town vehicle at his residence -- despite the fact that

this privilege was expressly conveyed by the Town policy between July 7 and

August 26, 2010. (R. 169, 186-187, 194). It should be noted that the District Court

never addressed this argument.

Defendants removed the town recreation vehicle from Plaintiff's home,

while Plaintiff was still in the hospital, and then denied Plaintiff reasonable access

to the vehicle after he returned from the hospital -- in derogation to the express

policy in effect between July 7, 2010 and August 26, 2010. This constitutes a

causal connection between Plaintiff's protected leave and Defendants' adverse job

action. R. 164-165). See Cifra v. GE Co., 252 F.3d 205, 217 (2nd Cir. 2001).

The temporal proximity between Plaintiff's hospitalization and Defendants'

violation of the Town Vehicle Usage Policy, also constitutes a materially adverse

job action, and is evidence of discriminatory intent. Fragale Aff. Exhibit E, Tr. 21-

22.[6] In <u>Richardson v. New York State Dept. of Corr. Ser.</u>, 180 F.3d 426, 446 (2d Cir. 1999), the court found that a transfer to a different department with no loss in wage or benefits could be an adverse employment action. Here, Plaintiff's inability to use the town vehicle did affect his benefits, since he was forced to use his own vehicle, and the town refused to reimburse him for his mileage. (R. 133-134). Therefore, a reasonable juror could find that Defendants denied Plaintiff reasonable access of the town vehicle to Plaintiff which was in and of itself an actionable adverse employment action which materially changed a pre-existing employment term and/or privilege.

Second, Plaintiff can also establish a claim under the FMLA for Defendants' termination of Plaintiff in retaliation to Plaintiff taking leave in July and August. <u>See</u> <u>Pontenza v. City of New York</u>, 365 F.3d 165, 167-168 (2d Cir. 2004).

Here a causal connection can be inferred through the close sequence of operative events between Plaintiff's leave ending in August 2010 and his termination in November 2010, especially when coupled with the evidence that Defendants' stated reason for terminating Plaintiff was pretextual. <u>See</u> <u>Cifra v. GE Co.</u>, 252 F.3d 205, 217 (2d Cir. 2001); <u>Hurlbert v. St. Mary's Health Care System, Inc.</u>, 439 F. 3d 1286 (11th Cir. 2006).

---

[6] Notably, Plaintiff's residence and the Highway Department are approximately at the same distance from the Recreation Department. (R.191).

35

## POINT V

## PLAINITFF HAS A VIABLE CLAIM UNDER THE ADA SINCE HE WAS TERMINATED FOR PRETEXTUAL REASONS AND HIS RETURN FROM HIS MEDICAL LEAVE OF ABSENCE WAS CLOSELY <u>FOLLOWED BY ADVERSE EMPLOYMENT ACTIONS</u>

Here, Plaintiff's heart condition constitutes a disability because he has a defibrillator in his chest that must be periodically changed; he is on medication for his heart condition; and has monthly checkups with his cardiologist. (R. 158-162); See <u>Epstein v. Kalvin-Miller Int'l, Inc.</u>, 21 F. Supp. 2d 400, 403 (S.D.N.Y. 1998) (citation omitted). The District Court found that Mr. Knox was disabled. (R. 241). Mr. Knox was also perceived as disabled as seen by the comments cited below. It should be noted that the subject vehicle use policy includes the language "employees are not permitted, under any circumstance, to operate a town vehicle, or personal vehicle for Town business, when any *physical* or mental impairment causes the employee to be unable to drive safely." (R. 212).

As demonstrated above, Defendants termination of Plaintiff for budgetary reasons was pretextual. Namely, Defendants admit that they did not consider the salaries or the perquisites of the three full time employees in the Recreation Department when they terminated Plaintiff. (R. 120-121).

Defendants' discriminatory animus against Plaintiff can also be inferred from additional adverse job actions by Defendants. First, Defendants took Plaintiff's keys to the town vehicle while Plaintiff was still in the hospital. (R.126,

191). After Plaintiff returned to work, Defendants prevented Plaintiff from reasonably accessing the vehicle and refused to let Plaintiff take the vehicle home, notwithstanding the policy that expressly gave Plaintiff the right to so until August 26, 2010. (R. 169, 186-187, 194).

Plaintiff repeatedly informed Defendants that he was having trouble accessing the town recreation vehicle; yet, Defendants intentionally ignored him. (R. 69, 186-187).   Namely, when Plaintiff went to the Highway Department to find out the procedure for him to take the vehicle and was informed there was no procedure.  (R. 169).  When Plaintiff spoke to Supervisor Rights and told him "I've been trying to use the vehicle, I don't have the keys.  If I want it on weekends, evenings, holidays, there is no way of getting it," Mr. Rights offered no solution (R. 186-187, 191).

Remarkably, when Plaintiff attended an executive Town Board meeting and asked how he could access the town vehicle, since he could not access the town vehicle on weekends or after business hours and was forced to use his own vehicle the town board did not give him any instructions. (R. 186-187).

In fact, Defendant Cullen admitted during his deposition that Mr. Knox expressed concerns regarding how he could access the town vehicle to the town board members and that "there probably *wasn't*" any written protocol concerning Mr. Knox's access to the vehicle. (R. 131).

37

During the August 26, 2010 Board meeting, Rights commented: "Mr. Knox is with us -- Ray has not been feeling well so it is a good idea to accommodate him." (R. 198). After this comment, the Board preceded to change the Town's Vehicle Use Policy, specifically eliminating Mr. Knox's ability to take the town vehicle home. (R. 198, 209, 212). At this same meeting, Mr. Knox told the Town Board that he felt he was being discriminated against and singled out as evidenced by the fact he was not being reimbursed for his mileage when he had been forced to use his own vehicle and was not able to access the town vehicle. (R. 152-153). Less than three months later and merely three months since Mr. Knox was hospitalized, Defendants terminated Plaintiff at the annual budget vote. (R. 183).

The District Court found that Mr. Rights' comment during the August 26, 2010 town meeting was irrelevant. (R. 242, Fn. 15). Mr. Rights' comment is relevant because of its context. Namely, Mr. Rights acknowledged Mr. Knox's disability, recommended accommodating him, and then the Board proceeded to change the vehicle use policy and deny Mr. Knox reimbursement for his mileage. (R. 152-153, 183, 198, 209).

Under the totality of the circumstances, a reasonable juror could infer that Defendants were intentionally preventing Plaintiff from using the Town vehicle because they perceived him as having a physical impairment which created a

liability exposure to Defendants (i.e. if Plaintiff had an accident with the Town vehicle while suffering a heart condition related problem).

In addition, as stated above, the District Court also mistakenly found that Mr. Knox was not terminated until December 31, 2010, and therefore, there was not sufficient temporal proximity between the Town's discriminatory conduct and Plaintiff's employment termination.

Plaintiff respectfully submits that the temporal proximity of his termination and the pretextual reasons underlying same strongly suggest that Defendants' true reason for terminating Plaintiff was motivated by discriminatory animus.

**POINT VI**

**PLAINTIFF HAS VIABLE CLAIMS UNDER THE NYHRL FOR AGE AND
DISABILIITY DISCRIMINATION**

The Second Circuit has repeatedly held that the elements of a successful employment discrimination claim under New York law are essentially identical to the elements of a successful employment discrimination claim under Federal law. See Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993) ("Stetson's state-law HRL claim is governed by the same standards as his federal claim. See, e.g., Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1180 (2d Cir.), cert. denied, 121 L. Ed. 2d 46, 113 S. Ct. 82 (1992)") (citations omitted).

Here, as stated above, Plaintiff has clearly articulated a claim for disability and age discrimination that must be adjudicated at trial.

## POINT VII

## DEFENDANTS ARE NOT ENTITLED TO LEGISLATIVE IMMUNITY

The individual defendants clearly acted in their administrative capacity when they denied Mr. Knox the privilege of taking the town recreation vehicle home, or use of same for recreation related events on weekends and after office hours. This was a brazen violation of the vehicle usage policy then in force between July 7, 2010 and August 26, 2010. (R. 174-177, 194); See Almonte v. City of Long Beach, 478 F.3d 100, 107-108 (2d Cir. 2007) ("absolute legislative immunity does not protect legislators against a claim of an administrative firing, even if the employee's position was later abolished pursuant to a legislative act.").

Therefore, the individual defendants are not entitled to legislative immunity.

## **CONCLUSION**

For the reasons stated above, the decision and order of the District Court

granting Defendants' summary judgment motion should be vacated.

Dated:        Mamaroneck, New York
              August 12, 2014

Respectfully submitted,

LAW OFFICE OF COSTANTINO FRAGALE

Costantino Fragale (9480)
Attorney for Plaintiff-Appellant
721 W. Boston Post Road
Mamaroneck, NY 10543
(914) 337-4001

41

## Certification of Compliance

Pursuant to Rule 32(a) (7) (C) of the Rules of Appellate Procedure, the foregoing brief contains 8,993 words.

Dated: August 12, 2014