# 14-1505

In the

# United States Court of Appeals

# For the Second Circuit

RAYMOND C. KNOX,

*Plaintiff-Appellant,*

v.

TOWN OF SOUTHEAST, MICHAEL RIGHTS, Town Supervisor,
individually and in their official capacity, DWIGHT YEE,
Town Councilman, individually and in their official capacity,
ROBERT CULLEN, Town Councilman, individually and in their
official capacity,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

**GAINES, NOVICK, PONZINI,
COSSU & VENDITTI, LLP**
*Attorneys for Defendants-Appellees*
11 Martine Avenue - 8th Floor
White Plains, New York 10606
(914) 288-9595

*Of Counsel:*
**DENISE M. COSSU (6900)**
**JAMES A. RANDAZZO (0156)**

*Appeal Press, LLC* - (914) 761-3600  (212) 267-6602  (16862)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT..................................................................1

COUNTERSTATEMENT OF THE ISSUES PRESENTED...................................2

COUNTERSTATEMENT OF THE CASE................................................4

STANDARDS OF REVIEW .............................................................. 17

ARGUMENT ................................................................................. 20

POINT I

    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO ABSOLUTE LEGISLATIVE IMMUNITY FOR THE PASSAGE OF THE 2011 BUDGET AND THE AMENDMENT TO THE AUTOMOBILE USAGE POLICY ............................................. 20

POINT II

    THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM .................................................. 22

POINT III

    THE DISTRICT COURT HELD THAT PLAINTIFF HAD FAILED TO SET FORTH ANY EVIDENCE THAT HIS POSITION WAS ELIMINATED IN BAD FAITH ................................. 24

POINT IV

    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT DISMISSING PLAINTIFF'S DISCRIMINATION AND RETALIATION CLAIMS BROUGHT PURSUANT TO THE FMLA, ADA, ADEA AND NYSHRL........................................ 33

CONCLUSION ............................................................................ 49

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                  **Pages**

*Almonte v. City of Long Beach,* 478 F.3d 100 (2d Cir. 2007) ................................. 20

*Back v. Hastings on Hudson Union Free School District,* 365 F.3d 107 (2d Cir.

    2004) ....................................................................................................... 48

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998)............................................................. 20

*Bohan v. County of Westchester*, 250 A.D.2d 796 (2d Dept. 1998)....................... 25

*Brennan v. Straub,* 246 F. Supp. 2d 360 (S.D.N.Y. 2003) ..................................... 23

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)....................................35-36

*Carlos v. Santos*, 123 F.3d 61 (2d Cir. 1997) ......................................................... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...................................................18-19

*Cifarelli v. Village of Babylon*, 894 F. Supp. 614 (E.D.N.Y. 1995), *aff'd,* 93 F.3d

    47 (2d Cir. 1996)........................................................................................ 22, 25

*Cifra v. G.E. Co.,* 252 F.3d 205 (2d Cir. 2001) ...................................................... 40

*Civil Service Employees Ass'n, Inc. v. Rockland Co. Bd. Of Co-Op Educ. Servs.,* 39

    A.D.3d 641 (2d Dept. 2007);........................................................................ 25

*Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268 (2001)........................................ 40

*Clements v. Nassau County,* 835 F.2d 1000 (2d Cir. 1987)................................... 19

*Dace v. ACF Industries, Inc.,* 722 F.2d 374 (8th Cir. 1983) .................................. 28

*Danzer v. Norden Sys., Inc.*, 151 F.3d 50 (2d Cir, 1998)...................................... 46

*DiSanza v. Town Board of Town of Cortlandt*, 90 A.D.3d 659 (2d Dept. 2011)

........................................................................................................25-26

*Dwyer v. Regan,* 777 F.2d 825 (2d Cir. 1985), *modified,* 793 F.2d 457 (2d Cir.

1986) ........................................................................................... 22, 25, 29

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004) .............................................. 36

*First Nat'l Bank of Az. v. Cities Serv. Co.,* 391 U.S. 253 (1988)......................... 19

*Folkes v. Hushion*, 283 N.Y. 536 (1940) .............................................................. 28

*Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636 (2d Cir. 2000)............................... 36

*Garrett v. Garden City Hotel, Inc.,* 2007 WL 1174891, 2007 U.S. Dist. LEXIS

31106 (E.D.N.Y. Apr. 19, 2007) ......................................................... 40

*Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14 (2d Cir. 1995) ... 19

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 554

(2d Cir. 2001) .......................................................................................... 40

*Graham v. LIRR*, 230 F.3d 34 (2d Cir. 2000) ....................................................... 31

*H. Sand & Co, v. Airtemp Corp.*, 934 F.2d 450 (2d Cir. 1991) ............................. 43

*Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718 (2d Cir. 1994) .................................. 17

*Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134 (2d Cir. 2010), cert. denied, 131 S.Ct.

1602 (2011)............................................................................................. 47

iii

*Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995) ............................... 20

*Hritz-Seifts v. Town of Poughkeepsie,* 22 A.D.3d 493 (2d Dept. 2005) ............ 25-26

*Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19 (2d Cir. 1994) ............... 17

*Jaramillo v. Weyerhaeuser* Co., 536 F.3d 140 (2d Cir. 2008) .............................. 18

*Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d 199 (2d Cir. 2006) . 34

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149 (2d Cir, 1998) ............................................ 42

*Krasner v. City of New York*, 2014 U.S. App. LEXIS 16600 (2d Cir. N.Y. Aug. 28, 2014) ............................................................................................... 37

*Kulak v. City of New York,* 88 F.3d 63 (2d Cir. 1996) ............................................ 18

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995) ................................................... 18

*Malena v. Victoria's Secret Direct, LLC,* No. 09 Civ. 5849, 2012 U.S. Dist. LEXIS 115900, 2012 WL 3542192 (S.D.N.Y. Aug. 16, 2012) ...................................... 34

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).... 19

*Matter of Aldazabal v. Carey*, 44 N.Y.2d 787 (1978) ............................................ 25

*Matter of Connolly v. Carey*, 80 A.D.2d 936, 937 (3d Dept. 1981) ................. 26, 31

*Matter of Della Vecchia v. Town of N. Hempstead*, 207 A.D.2d 484 (2nd Dept. 1994) ............................................................................................... 25-26

*Matter of Eugenio v. City of Yonkers,* 95 A.D.3d 1212 (2d Dept. 2012) .......... 25-26

*Matter of Klos v. Town of Babylon*, 237 A.D.2d 291 (2d Dept. 1997) .............. 25-26

iv

*Matter of Rosenthal v. Gilroy*, 208 A.D.2d 748, 748-49 (2d Dept. 1994)......... 24-27

*Matter of Slayton v County of Cayuga*, 56 A.D.2d 704 (4th Dept. 1977) .............. 31

*Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561 (S.D.N.Y. 2010) ......... 43

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...............................33-34

*Monica v. New York City Off-Track Betting Corp.*, 1995 WL 117879, 1995 U.S.
Dist. LEXIS 3350 (S.D.N.Y. Mar. 20, 1995) aff'd 1996 U.S. App. LEXIS 2423
(2d Cir.1996).................................................................................. 38

*Mormol v. Costco Wholesale Corp.*, 364 F.3d 54 (2d Cir. 2004)............................ 38

*Nauta v. City of Poughkeepsie*, 610 F Supp, 980 (S.D.N.Y. 1985).................. 13, 26

*Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.171, 182 (2d Cir. 1992) ........................... 45

*Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002) aff'd, 112 F. App'x 761 (2d
Cir. 2004)* ...................................................................................... 36

*Piekielniak v. Axelrod, 92 A.D.2d 968 (3d Dept. 1983) appeal denied, 59 N.Y.2d*
603 (1983)............................................................................... 26, 28, 31

*Pigott v. Battle Ground Academy,* 909 F. Supp. 2d 949 (M.D. Tenn. 2012) ......... 29

*Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98 (2d Cir. 1997) .......................... 18

*Ponticelli v. Zurich Am. Ins. Group,* 16 F. Supp. 2d 414 (S.D.N.Y. 1998).......... 41

*Potenza v. City of New York,* 365 F.3d 165 (2d Cir. 2004)................................. 14, 33

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998) ......................... 40

v

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997) ..................................................... 42

*Rose v. City of Newburgh*, 239 A.D.2d 587, 587 (2d Dept. 1997) .................... 25-26

*Rose v. New York City Bd. of Educ.*, 257 F.3d 156 (2d Cir. 2001) ........................ 46

*Ruhling v. Tribune Co.,* No. CV 04-2430, 2007 U.S. Dist. LEXIS 116, 2007 WL 28283 (E.D.N.Y. Jan. 3, 2007) ......................................................... 40

*Saenger v. Montefiore Med. Cir.*, 706 F. Supp. 2d 494 (S.D.N.Y. 2010) ............ 18

*Sank v. City Univ. of New York*, No. 2003 WL 1807142, 2003 U.S. District LEXIS 5471 Apr. 7, 2003 ................................................................ 36

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,* 183 F.3d 155 (2d Cir. 1999........ 34

*Schering v. Pfizer, Inc.*, 189 F.3d 218 (2d Cir. 1999) ............................................ 44

*Schreiber v. Worldco, LLC*, 324 F. Suppx, 2d 512 (S.D.N.Y. 2004) ................... 45

*SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133 (2d Cir. 2009) ................ 18

*SEC v. Research Automation Corp.,* 525 F.2d 31 (2d Cir. 1978) ......................... 20

*Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454 (S.D.N.Y. 2011), citing *Anderson v. Liberty Lobby*, 477 U.S. at 256 ....................................... 18-19

*Shields v. Dinga,* 222 A.D.2d 816 (3d Dept. 1995) ......................................... 26, 28

*Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161 (2d Cir. 2006) ............................. 14, 34

*Slattery v. Swiss Reinsurance Am, Corp.*, 248 F.3d 87 (2d Cir. 2001)........... 37, 46

*Smith v. Mac Murray*, 52 A.D.2d 637 (2d Dept. 1976)................................... 24, 27

vi

*Taggart v. Time Inc.*, 924 F.2d 43 (2d Cir. 1991)...................................................... 17

*Tomassi v. Insignia Fin, Group, Inc.*, 478 F.3d 111 (2d Cir. 2007) ......... 15, 45, 47

*Tyler v, Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992) ........................ 17, 49

*United States v. Frost,* 684 F.d 973 (10th Cir. 2012)................................................ 43

*United States v. Tocco*, 135 F.3d 116 (2d Cir. 1998) (quoting Fed. R. Evid,

    803(2)) ........................................................................................................ 43

*Valtchev v. City of New York*, 400 F. App'x 586 (2d Cir. 2010)............................. 34

*Vasquez v. Town Bd. of Town of Waterford*, 72 A.D.2d 883 (3rd Dept. 1979). 24-27

*Ying Jing Gan v. New York,* 996 F.2d 522 (2d Cir. 1993) ..................................... 20

*Zann Kwan v. Andalex Group LLC*, 737 F. 3d 834 (2d Cir. 2013) ........................ 28

## Statutes

29 U.S.C. § 2612(a)(1)...................................................................................33

29 U.S.C. § 631(a) .................................................................................... 41

29 U.S.C. § 623(a)(1).................................................................................. 41

29 CFR § 825.220(c)......................................................................................33

42 U.S.C. § 12112(a) ................................................................................. 33

Fed. R. Evid. 801(d)(2) ............................................................................... 44

vii

## PRELIMINARY STATEMENT

Plaintiff-Appellant Raymond C. Knox ("Knox or Plaintiff") is a seventy-two year old male who was employed by the Town of Southeast ("Town") as Director of Parks and Recreation for more than twenty-three years. Plaintiff suffered from heart problems and other health-related issues in 2010 which required him to miss time from work. The Town was experiencing severe financial problems in 2010 which it attempted to address with the adoption of the 2011 Town Budget, which eliminated five positions, including that of Plaintiff.

Plaintiff's claims here largely involve the elimination of his position. He also points to an amendment to the Town's automobile usage policy and certain allegedly "ageist remarks" as purported evidence of discriminatory and retaliatory treatment. By his complaint dated November 30, 2011 (A. 90-104), Plaintiff asserts claims against the Town and the Individual Defendants, Michael Rights ("Rights"), Dwight Yee ("Yee"), and Robert Cullen ("Cullen"), individually and in their official capacities as Town Supervisor and Town Councilmen, respectively, for their alleged violation of (1) the Family and Medical Leave Act ("FMLA") (First Cause Of Action); (2) Americans With Disabilities Act ("ADA") (Second Cause Of Action); (3) Age Discrimination In Employment Act Of 1967 ("ADEA") (Third Cause Of Action); (4) his due process rights pursuant to the 14th Amendment under 42 U.S.C. 1983 (Fourth Cause Of Action) and (5) retaliation based upon his

complaints of discrimination (Seventh Cause of Action). Plaintiff also alleges pendant state law claims arising out of Defendants' alleged discrimination on the basis of disability (Fifth Cause Of Action) and age (Six Cause Of Action) in violation of New York State Human Rights Law ("NYSHRL").

At the conclusion of discovery, Defendants moved for summary judgment and on March 31, 2014, Judge Edgardo Ramos of the United States District Court, Southern District of New York granted the Defendants' motion and dismissed the Complaint in its entirety. This appeal ensued.

## COUNTERSTATEMENT OF THE ISSUES PRESENTED

1.    Did the District Court err in finding that the Individual Defendants were entitled to legislative immunity for their actions?

**Answer:**    The District Court correctly found that the alleged conduct of the Individuals Defendants in amending an Automobile Usage Policy and eliminating Plaintiff's position in accordance with the budgetary process was "clearly legislative in nature" and entitled them to legislative immunity.

2.    Did the District Court err in finding that the Defendants were entitled to summary judgment on the Plaintiff's procedural due process claim?

**Answer:**    The District Court correctly found that the Defendants did not violate Plaintiff's procedural due process rights where his position was eliminated

for fiscal and efficiency purposes in accordance with the budgetary process and Plaintiff did not request a pre-termination hearing.

3.      Did the District Court err in finding that Defendants were entitled to summary judgment on the Plaintiff's substantive due process claim to the extent it was based upon his assertion that he was terminated in bad faith?

**Answer**:      The Court correctly held that Plaintiff had failed to set forth any evidence of bad faith on the part of the Defendants.

4.      Did the District Court err in finding that Defendants were entitled to summary judgment on the Plaintiff's discrimination and retaliation claims pursuant to FMLA, ADA, ADEA and NYSHRL?

**Answer**:      The Court correctly held that Plaintiff had failed to demonstrate his *prima facie* case as he failed to set forth evidence that he had suffered an adverse employment action or sufficient to support an inference that the Defendants had acted with the requisite retaliatory intent.

## COUNTERSTATEMENT OF THE CASE[1]

### A. Plaintiffs Employment with the Town

Plaintiff, Raymond C. Knox, is a 72 year-old male who was in the employ of the Town as the Director of Parks and Recreation for over 23 years. (AA. 4; AA. 6-7). He was classified as a "permanent competitive class employee," as he was required to take and pass a Civil Service Exam. (AA. 9; A. 32). Plaintiff was at all times a non-union employee. (AA. 88).

Plaintiff's duties as Director of Parks and Recreation included supervising two full-time CSEA union employees, Patricia Bohrman and Maryann Gallipani, as well managing the recreational budget, overseeing staff and recreational programs, researching new programs, paying bills, signing vouchers and overseeing day-today operations of office staff. (AA. 88-89). In his last year of employment with the Town, Plaintiff's annual salary was $65,000.00. (AA. 12; AA. 16-19).

---

[1] All references to the Appendix filed by the Plaintiff and entitled the "Appellant's Appendix," shall be referred to as "A.___." However, it is incomplete and violates Federal Rule of Appellate Procedure 30. Plaintiff-Appellant did not include all of the documents that were presented to and relied upon by the Court below, nor did he attempt to ascertain those documents to which the Defendants would want to direct this Court's attention. To the extent that such documents are not in the Appendix, they are contained in the Appellee's Appendix, which shall be referred to as "AA ._____."

**B. Plaintiff's Medical History**

After suffering a heart attack in 2000, Plaintiff underwent triple bypass surgery and had a defibrillator implanted in his chest. In February 2010, Plaintiff had surgery to remove and replace the defibrillator. (AA. 27). During the surgery, he acquired a bacterial blood infection which resulted in a five (5) week hospitalization, from May 2010 - July 7, 2010. (AA. 27-28; AA. 84; AA. 86-87). He returned to work on July 12, 2010, the Monday after his July 7, 2010 discharge from the hospital. (A. 86-87). In August 2010, Plaintiff underwent an overnight procedure to have the defibrillator re-implanted in his chest. (AA. 84). Plaintiff returned to work after the August procedure and continued to work for the Town until December 31, 2010. (AA. 87).

**C. The Elimination of Plaintiff's Position**

In September 2010, Defendant Rights submitted a preliminary budget for 2011 to the Town Board. (AA. 33). Plaintiff was aware of the Town's fiscal situation and the need to cut positions at the time the 2011 Budget was being prepared. He was also aware that one of the three positions in his department would most likely be eliminated. (AA. 150-152).

During the budgetary process, Defendant Cullen called the Personnel Director for Putnam County, Paul Eldridge, on two separate occasions to discuss

5

the Town's fiscal crisis and the procedure for eliminating civil service positions. (A. 27). In his second conversation with Eldridge, Cullen specifically mentioned that the Director of Parks and Recreation was one of the positions, among others, that the Town was considering eliminating. (A. 28).

On the morning of November 18, 2010, Defendant Cullen, Town Board member Roger Gross, and Town Attorney Willis Stephens appeared at Plaintiff's office and informed him that his position would be eliminated in the 2011 Budget due to budgetary concerns and spending cuts within the Town. (AA. 155-157). That evening, the Town Board voted to adopt the 2011 Budget, which eliminated Plaintiff's position, as well as four other positions: in zoning enforcement, parking enforcement, the highway department, and the building department. (AA. 161; A. A. 57-70). Defendant Cullen voted in favor of the 2011 Budget and Defendants Rights and Yee voted against it. (A.61). The Town continued to experience financial difficulties and four additional positions were eliminated in the 2012 Budget, including another position from the Parks and Recreation Department. (A. 30; AA. 77-78).

After the vote on the 2011 Budget, Plaintiff continued to work in his position as Director of Parks and Recreation until December 31, 2010. (AA. 82). From the date that he was first advised of the potential elimination of his position to the last

date that he worked for the Town, Plaintiff never requested a hearing regarding the elimination of his position. (AA. 163).

The position of Director of Parks and Recreation has not been refilled. (AA. 23). Plaintiff remains on a "preferred eligible list," which means that if his former position becomes available at any point within four years of his last day of employment in that position, he would be the only eligible candidate for the position. (A. 71-73). The Town would have to re-hire Plaintiff if his position were re-established. (A. 72). Ms. Bohrman testified at her deposition that she now performed the substantially the same functions and duties performed by Plaintiff when they worked together as a team. (A. 141-142)

**D. The Town Automobile Usage Policy**

On May 20, 1999, a resolution was enacted by the then-existing Town Board which provided, *inter alia,* that the Highway Superintendent, Town Building Inspector and Director of Parks and Recreation could take Town vehicles home and keep them overnight without first obtaining permission from the Town Supervisor. (A. 74-76). In 2009, shortly after Defendants Rights and Yee took office, they made a proposal to the Town Board to form a Town "vehicle pool," which would require Town vehicles to be stored in one location and any employee wishing to use one would report to that location and sign out the vehicle. (AA.

105-106). Plaintiff was present for at least three Town Board meetings where the vehicle pool was discussed, but never commented on the proposal. (AA.111-113). In early 2010, discussions of amending the 1999 Resolution were renewed (AA. 57-58) and "there was support amongst, actually, all five [Board members] to change the policy and not allow [any employee other than the Highway Superintendent] to take the car home anymore". (AA. 56).

A Town vehicle remained at Plaintiff's home throughout his 2010 hospitalization. As a result, the other Recreation Department employees had to use their personal vehicles to conduct business on behalf of the Town. They would then submit vouchers for mileage reimbursement which would come out of the Town's budget. (AA. 52).

In June 2010, Defendant Cullen called Plaintiff to tell him that the Town vehicle that had been parked at his residence would be moved and he and Ms. Bohrman brought it to the Highway Department for use by the Recreation Department employees. (AA. 51-52, 118, 122). Plaintiff's health was irrelevant to the relocation of the vehicle. (AA. 62-63). It was removed because the Recreation Department employees needed it for Town business. (AA. 51). The Automobile Usage Policy was formally amended on August 26, 2010 to incorporate Defendants Rights' and Yee's earlier vehicle pool proposal and provided that

only the Highway Superintendent was authorized to take a Town. vehicle home overnight without first obtaining permission from the Town (AA. 57-58; A.77-78). All Town vehicles were moved to the Highway Department where they were stored and available for use by Town employees. (AA. 117).

Plaintiff testified at his deposition that upon his return to work from medical leave, he would use the Town vehicle "[o]nce in a while... if ... needed ... for some specific reason," but because there was "no procedure," Plaintiff "chose not to use it," and stated that the vehicle was not always "available for [him]." (AA. 125-128). Plaintiff chose to use his personal vehicle to conduct Town business on a daily basis. (AA. 126; 142-143).

Plaintiff's testimony is self-contradictory. He testified that he was not advised as to the proper procedure for accessing the Town vehicle (AA. 125-126), but that he was aware of the procedure for retrieving the vehicle during normal weekday business hours. (AA. 126-127). He testified that the vehicle was not available, but then admitted that Defendant Rights told him he could use the Town vehicle "whenever he want[ed]". (AA. 128). No other employee complained or had difficulties figuring out how to access Town vehicles from the Highway Department. (AA. 65).

Plaintiff also claims that he was the only Town employee who was denied reimbursement for mileage expenses.(AA.142-143). However, the Town's decision to not reimburse Plaintiff for the use of his personal vehicle, stemmed solely from the fact that Town vehicles were available to Plaintiff, but he refused to use them. (AA. 69-70). In fact, Plaintiff admitted that he was told to use one of the Town vehicles and that he would not be reimbursed for personal mileage, but "[his] reaction to that was no, I didn't have to use the Town vehicle." (AA. 142).

### E. Defendant Michael Rights' Alleged Remarks Concerning Plaintiff's Medical Condition

Plaintiff testified that both during his hospitalization in 2010 and soon after his release, Defendant Rights made reference to his heart condition and hospitalization during Town Board meetings. (AA. 92-93). According to Plaintiff, Defendant Rights remarked that he was "glad to see [Plaintiff] back at work" despite the issues with his heart and his hospitalization (AA. 93) and that during a televised Board meeting he said, "Ray Knox is hospitalized. We wish him well. He has a heart issue. I don't know when he is going to be back to work." (AA. 93-96). Plaintiff did not know whether these remarks were made with ill-will or in the spirit of wishing him a speedy recovery. (AA. 97). In any event, Plaintiff never

complained to anyone at the Town about these comments, nor did Plaintiff attempt to speak to Rights personally about the remarks. (AA. 98; AA. 100-101).[2]

### F. The Order and Opinion of the Court below

**1. The District Court held that the Individual Defendants were entitled to Legislative immunity.**

The Court found that legislative immunity did apply to the Individual Defendants to the extent that they were sued in their personal capacities. The elimination of Plaintiff's position and amendment to the Automobile Usage Policy were "quintessentially legislative" in nature, thereby entitling them to immunity from liability. (A. 226).

**2. The District Court held that the Defendants were entitled to summary judgment dismissing Plaintiff's procedural due process claim.**

Plaintiff argued that he was wrongfully deprived of his position as Director without a pre-termination hearing in violation of his procedural due process rights. Plaintiff conceded that he never requested a hearing, but argued that he was not

---

[2]Plaintiff appears to have given up on his allegation that he "sensed hostility" from Defendant Yee when Yee allegedly questioned the propriety of Plaintiff's usage of compensation time ("comp time"). (AA: 21-22; A. 94-95). He failed to produce any evidence supporting this contention and in fact, Plaintiff admitted that ability to receive comp time "stayed the same." (AA. 137). Similarly, Plaintiff has also given up the claim that his vacation time was reduced in retaliation for taking a medical leave of absence. In fact, although he was actually only entitled to four weeks of vacation, he took five weeks in the past. (AA. 71, 138, 141). Thus, as Judge Ramos noted, to the extent that Plaintiff intended to base any of his claims regarding comp and vacation time, those theories of liability were abandoned. (A. 225).

given enough time to request such a hearing prior to his termination because he was notified of the decision to eliminate his position within hours of the adoption of the 2011 Budget. The Court, however, held the relevant time interval was not the hours between the notice and the Budget vote on November 18, 2010, but the interval between the notice and the time that Plaintiff's employment with the Town officially ended, December 31, 2010. Plaintiff had approximately six weeks during which time he could have requested a pretermination hearing. He did not do so and as a result, his procedural due process rights were not violated. (A. 230-232).

### 3. The Court held that Plaintiff had failed to set forth any evidence of bad faith on the part of Defendants.[3]

First, Judge Ramos recognized that a public employer may abolish positions for purposes of economy or efficiency, but not as a subterfuge to avoid the statutory protection afforded a civil servant before they are discharged. Accordingly, it was Plaintiff's burden to show that "there was not a *bona fide* financial reason to abolish his position, or that a financial saving was not accomplished by the elimination of the position, or that another person was hired

---

[3] The Court also recognized that substantive due process did not apply and that Plaintiff had failed to cite to any authority supporting a substantive due process analysis. (A. 232, n. 9). Instead, Plaintiff's bad faith claims were analyzed in the context of the Civil Service Law. The Court found that Plaintiff had not set forth any evidence of bad faith on the part of Defendants, and dismissed those claims.

in his place, or some other indicia of bad faith." *Nauta v. City of Poughkeepsie*, 610 F Supp, 980, 982 (S.D.N.Y. 1985) (A. 232-233).

Second, neither the claim that an existing Parks and Recreation Department employee took over Plaintiff's duties nor the claim that others of less seniority retained their positions and assumed Plaintiff's duties gave rise to an inference of bad faith. Bad faith could also not be inferred from the fact that Plaintiff was the only member of the Department with the Master's Degree, which he contended was a requirement of the Director position, as neither of the remaining employees replaced him as Director. The fact that Plaintiff was allegedly more educated than the other Department employees also did not give rise to any inference of bad faith or dishonest purpose in eliminating the Director position.

Third, Plaintiff's argument that he was the lowest paid employee in the Department also did not give rise to an inference of bad faith. Indeed, Defendant Cullen testified that salaries were not a consideration in deciding which positions to eliminate and that Defendants believed it would "run smoother" to have "two equal members with the same job title working in the Recreation Department" then to have "a supervisor of only one employee." (A. 235, citing A. 120:20-23; A.121:11). Accordingly, Plaintiff's bad faith claims were dismissed. (A. 232-236).

**4. The Court held that Defendants were entitled to summary judgment on Plaintiff's discrimination and retaliation claims pursuant to the FMLA, ADA, ADEA and NYSHRL.**

The Court held that the elimination of Plaintiff's position did not occur under circumstances giving rise to an inference of a discriminatory or retaliatory intent. (A. 240, citing *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir. 2006) and *Potenza v. City of New York,* 365 F.3d 165, 168 (2d Cir. 2004)). Plaintiff was disabled and on medical leave from May 2010 until his return to work in July 2010; the vote for the 2011 Budget occurred on November 18, 2010; and Plaintiff's employment with the Town officially ended on December 31, 2010. Regardless of whether the date of the alleged adverse employment action occurred on November 18, 2010 (the date of the Budget vote) or December 31, 2010 (Plaintiff's last date of employment), the Court reasoned that the claim would fail as the passage of four or five months from his July return to work and the alleged adverse employment action "is insufficient to establish a causal connection between the protected activity and the adverse action." (A. 241).

The District Court also addressed Plaintiff's arguments that the elimination of his position occurred under circumstances giving rise to an inference of age discrimination. Plaintiff relied upon two occurrences in support: that on November 18, 2010, Ms. Bohrman stated to Plaintiff "between tears" that Councilman Gross "[told] her . . . that Ray [Knox] is not going to be employed

after December 31st, we are cutting his position, and we chose him because he already has a retirement coming to him" (AA. 159) and that Defendants Rights and Yee subjected a former Town Clerk to "ageist harassment," causing her to retire. However, the Court held that neither constituted admissible evidence demonstrating that the Plaintiff's termination occurred under circumstances giving rise to an inference of age discrimination. (A. 242).

The purported Gross statement was "rank hearsay" and not to be considered on a motion for summary judgment (A. 243) and the alleged "ageist harassment," resulting from comments directed to the former Town Clerk were isolated, stray remarks which, when considered in the context of all the evidence, were too "remote and oblique . . . in relation to the employer's adverse action" to permit a reasonable jury to find for Plaintiff. (A. 246, citing *Tomassi v. Insignia Fin, Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007)).

The Court also could find no discriminatory intent on the part of the rest of the Board members arising from unrelated comments made by Rights and Yee to the former Town Clerk, as there was no evidence that the Board members who voted in favor of the 2011 Budget were motivated by Plaintiff's age. In fact, the there was no evidence that the allegedly ageist comments or harassment made to the Town Clerk were ever made or directed towards Plaintiff. (A. 245-246).

Plaintiff relied upon his own unsubstantiated affidavit asserting that all of the employees whose positions were eliminated in 2011 and 2012 were at least forty years old to support his claim of age discrimination. However, such "bare and unsupported allegation" was insufficient to raise an inference of discriminatory intent on the part of Defendants. (A. 246, fn. 19).

In addition, although it may have made Plaintiff "unhappy," the revised Town Automobile Usage Policy did not constitute an adverse employment action. Similarly, the denial of Plaintiff's requests for mileage reimbursements did not constitute an adverse employment action. Plaintiff "chose not to use" the Town vehicles and used his personal vehicle without first obtaining approval from the Town Supervisor. (AA. 68, 55). Under these circumstances, no discriminatory intent could be inferred. (A. 237, fn. 13).

The Court also addressed the argument that an inference of discrimination could be drawn from Defendant Rights' comments regarding Plaintiff's health during a Town Board meeting, after which the Board amended the Automobile Usage Policy. However, the Court could "discern [no] ill-will or discriminatory meaning from the comment" which simply acknowledged Plaintiff's medical condition and expressed concern for his well-being. In addition, even if they could be read as evidencing a discriminatory motive or animus, because the amendment

to Automobile Usage Policy was not an adverse employment action, it could not, in any event, provide a basis for a discrimination or retaliation claim. (A. 242, fn. 15).

Finally, Plaintiff's failure to raise a triable issue of fact with respect to his employment discrimination claims brought under the ADA and ADEA was also fatal to his claims brought pursuant to the NYSHRL. The elements of an employment discrimination claim are essentially the same under the NYSHRL and its federal counterparts and since the Court already held that the Defendants were entitled to summary judgment on Plaintiff's ADA and ADEA claims, his NYSHRL claim would also be dismissed. (A. 247, fn.20, citing *Tyler v, Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir. 1992)).

## STANDARDS OF REVIEW

The Court of Appeals reviews a district court's grant of summary judgment *de novo*. See *Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 23 (2d Cir. 1994); see also *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721 (2d Cir. 1994); *Taggart v. Time Inc.*, 924 F.2d 43, 45-46 (2d Cir. 1991). The Court utilizes the same standard as the district court: summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. The non-moving party may

not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful. See, e.g., *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir. 1997); *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996); *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir. 1995).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Cir.,* 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser* Co., 536 F.3d 140, 145 (2d Cir. 2008)). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.,* 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011), citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*

18

As the moving party here, the Defendants bore the initial burden of informing the Court of the basis for their motion and identifying the matter they believed demonstrated the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Upon Defendants satisfying this burden, the onus then shifted to Plaintiff to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250. Plaintiff, however, "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986), he "must set forth specific facts showing that there is a genuine issue of fact for trial." *First Nat'l Bank of Az. v. Cities Serv. Co.,* 391 U.S. 253, 288 (1988). He may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995), but rather, "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno,* 812 F. Supp. 2d at 467-68, citing *Anderson v. Liberty Lobby*, 477 U.S. at 256-57.

Where, as here, a Defendant's state of mind is at issue, in order to award summary judgment, Plaintiff must demonstrate solid circumstantial evidence to prove his case. *Clements v. Nassau County,* 835 F.2d 1000, 1005 (2d Cir. 1987). He cannot defeat summary judgment by relying "simply on conclusory statements or contentions that the affidavits supporting the motion are not

credible." *Ying Jing Gan v. New York,* 996 F.2d 522 (2d Cir. 1993); *SEC v. Research Automation Corp.,* 525 F.2d 31, 33 (2d Cir. 1978).

## ARGUMENT

## POINT I

### THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO ABSOLUTE LEGISLATIVE IMMUNITY FOR THE PASSAGE OF THE 2011 BUDGET AND THE AMENDMENT TO THE AUTOMOBILE USAGE POLICY

It is well-settled that federal, state and regional legislators are entitled to absolute immunity from civil liability for their legislative actions. *Bogan v. Scott-Harris*, 523 U.S. 44, 46, (1998). That protection has also been extended to local officials acting in legislative capacities. *Id.;* see also *Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir. 1997). In determining whether such immunity applies, courts take a "'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995). Under the functional approach, "whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question." *Almonte v. City of Long Beach,* 478 F.3d 100, 106 (2d Cir. 2007) (holding that legislative immunity applies to votes on budgetary resolutions that terminated the budget lines for plaintiffs' positions).

In a one paragraph point (Appellate Brief at p. 40), Plaintiff does not dispute that the Individual Defendants are entitled to absolute legislative immunity with respect to the adoption of the 2011 Budget and the amendment to the Automobile Usage Policy. Instead, he argues for the first time that the removal of the Town vehicle from his home while he was hospitalized was an administrative act to which legislative immunity does not apply. However, as discussed *infra*, that act did not constitute an adverse employment action, nor did it occur under circumstances evidencing a discriminatory intent.

In addition, *Almonte,* upon which Plaintiff relies, does not support his position, but the Court's holding that legislative immunity extends to the Individual Defendants' vote on the 2011 Budget as "quintessentially legislative" and "part of a 'broader legislative policy' that, for legitimate budgetary and efficiency purposes, eliminated various positions within the Town." In addition, although Plaintiff alleged a discriminatory motive or purpose, "case law is clear that in deciding whether an act is legislative or administrative in nature, the determinative factor is the *nature* of the act, and not the motive or intent of the official performing it." (A. 228, citing, *Bogan,* 523 U.S. at 54-55.)

Similarly, there can be no question that the Individual Defendants are also entitled to absolute legislative immunity with respect to the legislative act of

amending the Automobile Usage Policy. It, like the passage of the 2011 Budget affected all Town employees, and was not specifically directed at Plaintiff. (A. 229).

## POINT II

## THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM

It is undisputed that Plaintiff, "a permanent competitive class employee" under New York Civil Service Law, had a property interest in his continued employment as Director of Parks and Recreation. While generally an employee with a property interest in his employment is entitled to notice and, typically, a pre-termination hearing, *Cifarelli v. Village of Babylon*, 894 F. Supp. 614, 619 (E.D.N.Y. 1995), *aff'd*, 93 F.3d 47 (2d Cir. 1996), the Second Circuit has recognized that a municipality need not routinely provide hearings for employees whose positions are targeted for elimination whenever it adopts such efficiency measures. *Dwyer v. Regan*, 777 F.2d 825, 833 (2d Cir. 1985), *modified*, 793 F.2d 457 (2d Cir. 1986)) ("Attendant fiscal and administrative burdens must be considered when government positions are eliminated. A state may well, from time to time, decide to make its operations more efficient by abolishing or consolidating positions or by implementing a considered substantial reduction in its work force"). In such circumstances, the state must grant an employee some kind of pre-

termination hearing only where he or she "requests it." *Id.* Accordingly, to prevail on a procedural due process claim in this context, Plaintiff must show that he made a timely request for a pre-termination hearing. *Id*; see also *Cifarelli*, 894 F. Supp. at 621. Plaintiff made no request for a hearing of any kind. (AA. 163:17-20).

Plaintiff instead argues that he was provided no opportunity to request a pre-termination hearing because he received notice that he would be terminated and was actually terminated on November 18, 2010, the date of the Town Board vote on the 2011 Budget (Appellant's Brief at p. 16). Plaintiff does not cite to one case that supports his position. In fact, he continues to rely upon cases where the plaintiffs' jobs ended very shortly after receiving notice and, in some instances, the same day. For example, in *Cifarelli*, the plaintiff was advised "a few hours before" his employment with the Town ended that he would no longer be employed by the Town. *Cifarelli* 894 F. Supp. at 617.  In, *Brennan v. Straub*, 246 F. Supp. 2d 360, 367 (S.D.N.Y. 2003), the plaintiff was "fired," "unceremoniously asked to leave the building at once," and had all of her "Department items (identification, pass and keys) . . . taken from her prior to her departure on that day," four days before her position was formally eliminated.

The relevant period of time for determining whether Plaintiff had sufficient opportunity to request a hearing is the time between his notification and December

31, 2010, the time that he was no longer employed by the Town. On November 18, 2010, Plaintiff was notified at his position would be eliminated by the Town Board vote on the 2011 Budget that evening. He continued to work for the Town until December 31, 2010, with the new Budget becoming effective on January 1, 2011. He therefore had approximately six weeks during time which he could have requested a pre-termination hearing. He did not and as a result, this Court should affirm the dismissal of Plaintiff's procedural due process claims.

## POINT III

### THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF HAD FAILED TO SET FORTH ANY EVIDENCE THAT HIS POSITION WAS ELIMINATED IN BAD FAITH

Plaintiff argues that his substantive due process rights were violated because his position was eliminated in bad faith. He does not even address the District Court's holding that substantive due process is inapplicable and that his claims should be determined under the Civil Service Law. Nor does he support his position with citation to any legal authority. Instead, he continues to rely upon the same cases as below, cases brought pursuant to the Civil Service Law. See, for example, *Matter of Rosenthal v. Gilroy*, 208 A.D.2d 748, 748-49 (2d Dept. 1994); *Matter of Vasquez v. Town Bd. of Town of Waterford*, 72 A.D.2d 883 (3d Dept. 1979); *Matter of Smith v. Mac Murray*, 52 A.D.2d 637, 638 (2d Dept. 1976).

In addition, and perhaps more importantly, Plaintiff fails to set forth any direct evidence of bad faith or evidence from which an inference of bad faith may be drawn. It is well established that a public employer may abolish civil service positions for purposes of economy or efficiency. *Cifarelli*, 93 F.3d at 51; *Dwyer v. Regan,* 777 F.2d 825 (2d Cir. 1985), *modified,* 793 F.2d 457 (2d Cir. 1986)) ("Attendant fiscal and administrative burdens must be considered when government positions are eliminated. A state may well, from time to time, decide to make its operations more efficient by abolishing or consolidating positions or by implementing a considered substantial reduction in its work force."); see also, *Matter of Eugenio v. City of Yonkers,* 95 A.D.3d 1212 (2d Dept. 2012); *DiSanza v. Town Board of Town of Cortlandt*, 90 A.D.3d 659 (2d Dept. 2011); *Civil Service Employees Ass'n, Inc. v. Rockland Co. Bd. Of Co-Op Educ. Servs.,* 39 A.D.3d 641, 642 (2d Dept. 2007); *Hritz-Seifts v. Town of Poughkeepsie,* 22 A.D.3d 493, 492-493 (2d Dept. 2005); *Rose v. City of Newburgh*, 239 A.D.2d 587, 587-588 (2d Dept. 1997); *Matter of Aldazabal v. Carey*, 44 N.Y.2d 787 (1978); *Bohan v. County of Westchester*, 250 A.D.2d 796, (2d Dept. 1998); *Matter of Klos v. Town of Babylon*, 237 A.D.2d 291 (2d Dept. 1997); *Matter of Rosenthal v. Gilroy,* 208 A.D.2d 748, 748-749 (2d Dept. 1994); *Matter of Della Vecchia v. Town of N. Hempstead*, 207 A.D.2d 484 (2d Dept. 1994).

It is also well established that one who challenges the abolishment of a position has the "burden of showing that there was not a *bona fide* financial reason to abolish his position, or that a financial saving was not accomplished by the elimination of the position, or that another person was hired in his place, or some other indicia of bad faith." *Nauta v. City of Poughkeepsie, N.Y.,* 610 F. Supp. 980, 982 (S.D.N.Y. 1985); see also, *Matter of Eugenio v. City of Yonkers* supra; *DiSanza,* supra; see also *Hritz-Seifts,* supra; *Rose,* supra; *Klos,* supra; *Rosenthal,* supra; and *Della Vecchia,* supra.

Plaintiff states that "a civil service employee can demonstrate that a public employer has terminated him in bad faith when an employee performs 'substantially the same duties' as the discharged civil service employee" (Appellant's Brief at p. 17). However, that contention improperly omits the key consideration, which is whether someone was *newly hired* to replace the employee. Here, no one was hired to replace Plaintiff and it is well-settled that the assumption of the duties of an abolished position by another existing employee, in itself, is not proof of bad faith. *Shields v. Dinga,* 222 A.D.2d 816, 818 (3d Dept. 1995); see also *Matter of Piekeilniak v. Axelrod, et. al.,* 92 A.D.2d 968 (3d Dept. 1993); and *Matter of Connolly v. Cary et. al.,* 80 A.D.2d 936 (3d Dept. 1981).

Plaintiff also states that "New York courts have found that a public employer has failed to effectively abolish a civil service position when an employee, *not appointed to the same civil service title as the terminated employee*, performs the same duties that the terminated civil service employee performed." (emphasis added) (Appellant's Brief at pp. 17-18). However, Plaintiff again misstates the law, this time by *adding* the italicized parenthetical phrase, rather than *omitting* a key consideration. Plaintiff cites no legal authority to support his newly minted proposition, nor does any exist. Instead, he relies upon cases that demonstrate the fallacy of his stated propositions in that they either concern new employees hired to perform the duties of a terminated employee or non-civil service employees performing those same duties. In no instance do the cases Plaintiff relies upon refer to *current* employees performing the duties of the employee whose position was eliminated. *Matter of Rosenthal v. Gilroy*, 208 A.D.2d 748, 749 (2d Dept. 1994) (person hired for newly titled position performed substantially the same duties as the former employee whose position was abolished); *Matter of Vasquez v. Town Bd. of the Town of Waterford*, 72 A.D.2d 883 (3d Dept. 1979) (person hired for newly created position of Public Safety Officer performing duties virtually identical to abolished position of Chief of Police); *Matter of Smith v. Mac Murray*, 52 A.D.2d 637 (2d Dep't 1976) (non-civil service trainees employed in same position as ousted civil service employees); and

*Folkes v. Hushion*, 283 N.Y. 536, 540 (1940) (non-civil service employee performs duties formerly performed by the civil service employee holder of the position).

In this case, it is undisputed that the Town did not hire a new person to perform the duties of the Director. In addition, although Plaintiff contends that Ms. Bohrman was "not appointed in accordance with the New York Civil Service Laws to Director of Recreation," (Appellant's Brief at p. 18), he does not suggest or present any evidence establishing that either Ms. Bohrman or Ms. Gallipani were not appointed in accordance with the New York Civil Service Law. In fact he *concedes* that Ms. Bohrman is a civil service employee, but argues without citation to any legal authority, that bad faith may be inferred simply because Ms. Bohrman, took over his duties. However, the fact that Ms. Bohrman, an *existing* employee, took over Plaintiff's duties does not give rise to any inference of bad faith.[4]

Plaintiff also argues that bad faith can be inferred because of "weaknesses, implausibilities, inconsistencies or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions..." (Appellant's Brief at pp. 20-21 citing *Zann Kwan v. Andalex Group LLC*, 737 F. 3d 834, 846 (2d Cir. 2013); *Dace v. ACF Industries, Inc.,* 722 F.2d 374, 379 (8th Cir. 1983); and *Pigott v. Battle*

---

[4] Plaintiff's attempt to distinguish *Shields* and *Piekeilniak,* on the grounds that unlike those cases, his duties were assumed by one individual does not support his apparent contention that an inference of bad faith may be drawn from that fact, nor does he cite any other legal authority to support that position. (Appellant's Brief at 23-24).

*Ground Academy,* 909 F. Supp. 2d 949 (M.D. Tenn. 2012))  However, Plaintiff fails to actually demonstrate any such "implausibilities, inconsistencies or contradictions" and the cases he cites in support are inapposite and not controlling.

Defendants have amply shown the fiscal and budgetary reasons underlying their decision to abolish Plaintiff's position, as well as four other positions, with the passage of the 2011 Budget. (AA. 161). In fact, Plaintiff was aware of the Town's fiscal situation and that positions would be eliminated. (AA. 150-152). Four additional positions, including another position from the Recreation Department, were also eliminated the following year. (A. 30). Indeed, the decision to eliminate Plaintiff's position and eight others in a two year time frame shows the Town's legitimate attempts to rectify their budget deficit via "a substantial reduction in its workforce." *Dwyer v. Regan,* supra.

The elimination of Plaintiff's position also promoted efficiency and reduced redundancy within the Department, reasons which are consistent with their fiscal considerations. At the time of the vote on the 2011 Budget, in addition to Plaintiff, the Department consisted of Ms. Bohrman and Ms. Gallipani, both Recreation Leaders who reported to Plaintiff. As indicated by Defendant Cullen during his deposition testimony, Defendants believed it would "run smoother" to have "two equal members with the same job title working [in] the Recreation Department"

29

(i.e. eliminating the Director position) than to have "a supervisor of only one employee" (i.e. eliminating one of the two Recreation Leader positions). (A. 120-121).[5]

Plaintiff also argues that Defendants' reasons were "pretextual" because although they claim budgetary concerns, he was the "lowest paid permanent employee of the Recreational Department" and the "Town made substantive contributions to Ms. Bohrman's and Ms. Gallipani's pensions, but no such perquisite was extended to Plaintiff." (Appellant's Brief at p. 21). This statement is not only deceptively stated, but also irrelevant to whether bad faith may be inferred. Bohrman and Gallipani were both CSEA union members, whereas Plaintiff was not. Plaintiff's base pay was higher than that of Bohrman and Gallipani, but as union members they were eligible to receive overtime pay as well as retirement benefits. (AA. 90-91). In addition, notwithstanding his contentions regarding the compensation and benefits paid to Bohrman and Gallipani, Plaintiff does not – indeed cannot – demonstrate that there was no financial saving accomplished by the elimination of his position. (see generally, *Nauta,* 610 F. Supp. at 982).

---

[5] Plaintiff contends that Defendant Cullen's testimony "flies in the face" of Defendants' stated reasons for the elimination of Plaintiff's position. (Appellant's Brief at p. 21). Plaintiff does not actually explain that statement for the simple reason that there is nothing implausible, inconsistent or contradictory about it.

Plaintiff also asserts that Defendants' bad faith can be inferred from the fact that he was the only member of the Department with a four year college degree, a minimum requirement for the position of Director, and that he had the most seniority.[6] However, while Plaintiff's duties may have been performed by Ms. Bohrman, an existing employee, she did not replace him as "Director." (AA. 23, 25, A. 141). Therefore, whether the remaining employees held four-year college degrees is irrelevant to a determination of whether Plaintiff has raised a material issue of fact as to the Defendants' alleged bad faith. Nor does the fact that others of less seniority retained their positions and assumed petitioner's duties require a different conclusion. See *Piekielniak v. Axelrod,* 92 A.D.2d 968, 969-70 (3d Dept. 1983) *appeal denied,* 59 N.Y.2d 603 (1983), see also, *Matter of Connolly v Carey,* 80 A.D.2d 936, 937 (3d Dept. 1981) and *Matter of Slayton v County of Cayuga,* 56 A.D.2d 704 (4th Dept. 1977).

Most telling is the fact that not one of the cases Plaintiff cites involves the elimination of a position by a municipality pursuant to the budgetary process, but rather the retaliatory termination of an employee in the private sector after that employee complained of discriminatory treatment. In *Kwan,* the Second Circuit did

---

[6] Plaintiff's citation to *Graham v. LIRR,* 230 F.3d 34 (2d Cir. 2000) in purported support of this proposition is unavailing. It does not relate or refer to the education or seniority status of a municipal employee whose position had been eliminated as a result of budgetary and efficiency concerns, but simply sets out the standard for a District Court to follow in determining a summary judgment motion.

not address circumstances under which an inference of bad faith may be inferred as urged here, but that "but-for" causation in a retaliatory discharge claim may be shown by demonstrating "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-retaliatory reasons for its action." 737 F. 3d at 846. No such weaknesses exist in this case. *Dace* and *Pigott*, decided by the Eighth Circuit and a Tennessee District Court, respectively, are not controlling authority at all concerned actions by private sector employers alleged to be discriminatory. In *Dace*, defendant's witnesses gave inconsistent, contradictory and unsupported reasons for plaintiff's demotion, while in *Pigott*, plaintiff provided evidence that defendants had suspiciously changed their reasons for discharging her and their stated reasons lacked credibility. By contrast, the reasons Defendants have offered supporting the elimination of the Plaintiff's position have been consistent, supported and unchanging.

As the District Court held, "Plaintiff has pointed to absolutely no evidence in the record to refute Defendants' proffered reason for the abolishment of Plaintiff's position, or to suggest that the reason set forth by Defendant Cullen at his deposition was pretextual or otherwise untrue. ... As Defendant Cullen's testimony makes clear that Defendants had a legitimate, efficiency-related reason for abolishing Plaintiff's position, and as Plaintiff has failed to come forward with any evidence from which the inference can be drawn that the proffered reason is

pretextual, Plaintiff has failed to satisfy his burden of proving bad faith." (A. 235-236).

## POINT IV

## THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT DISMISSING PLAINTIFF'S DISCRIMINATION AND RETALIATION CLAIMS BROUGHT PURSUANT TO THE FMLA, ADA, ADEA AND NYSHRL

### A. The Legal Standard

The FMLA provides that an eligible employee must be permitted to take unpaid leave for up to twelve weeks for a serious medical condition, 29 U.S.C. § 2612(a)(1), and prohibits an employer from "discriminating or retaliating against an employee ... for having exercised . . . [his FMLA rights,]" 29 C.F.R. § 825.220(c). The ADA also prohibits discrimination against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

Here, Plaintiff does not even attempt to establish a denial of benefits claim under the FMLA as he cannot show that Defendants denied him any benefits to which he was entitled. Instead, he alleges retaliation and/or discrimination under the FMLA, ADA, ADEA and NYSHRL. These claims are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); see *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (applying *McDonnell Douglas* to FMLA

retaliation claim); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (applying *McDonnell Douglas* to ADA discrimination claim) and *DiGirolamo v, MetLife Group, Inc.*, 494 F. App'x 120, 122 (2d Cir. 2012) (noting that ADEA and NYSHRL claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas*). Under *McDonnell Douglas,* a plaintiff must first establish a *prima facie* case; the employer must offer through the introduction of admissible evidence a legitimate, non-discriminatory reason for the adverse employment action; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is pretextual. *Sista, 445* F.3d at 169.

To establish a prima facie case of retaliation under the ADA, ADEA, or the NYSHRL a plaintiff must establish that: "(1) the employee was engaged in a protected activity under the [relevant statute], (2) the employer was aware of the activity, (3) an adverse employment action occurred with respect to plaintiff, and (4) a causal connection exists between the protected activity and the adverse employment action." *Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir. 1999)) (ADA retaliation claim); *Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d 199, 205-06 (2d Cir. 2006) (ADEA retaliation claim); *Malena v. Victoria's Secret Direct, LLC,* No. 09 Civ. 5849, 2012 U.S. Dist. LEXIS 115900, 2012 WL 3542192, at *9 (S.D.N.Y. Aug. 16, 2012) (applying same elements to

prima facie claim of retaliation under NYSHRL). To establish a *prima facie* case of discrimination or retaliation under both the FMLA and the ADA, a plaintiff must establish that the adverse employment action at issue occurred under circumstances giving rise to an inference of retaliatory animus. *See Potenza,* 365 F.3d at 168 (setting forth elements of FMLA retaliation claim) *and Sista,* 445 F.3d at 169 (setting forth elements of ADA retaliation claim).

## B. Adverse Employment Action

The Supreme Court has stated that in order to be actionable under federal discrimination laws, an adverse employment action must be "tangible" or "material." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, (1998); see also *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.") "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.

Materially adverse employment actions also include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . or other indices . . . unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir.

2004). However, a "bruised ego," a "demotion without change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or material adverse employment action. *Ellerth*, 524 U.S. at 761. An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

Lesser actions may suffice if the plaintiff shows that "(1) using an objective standard; (2) the total circumstances of [his] working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." *Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002) aff'd, 112 F. App'x 761 (2d Cir. 2004)*. Although "adverse employment actions extend beyond readily quantifiable losses, 'not everything that makes an employee unhappy is an actionable adverse action.'" *Sank v. City Univ. of New York*, No. 2003 WL 1807142, at *10 n.24, 2003 U.S. Dist. LEXIS 5471 (S.D.N.Y. Apr. 7, 2003) (quoting *Phillips v. Bowen*, 278 F.3d at 117).

In this case, Plaintiff alleges that he was subject to an adverse employment action in that (1) "immediately after Plaintiff was released from the hospital and returned to work, Defendants prevented Plaintiff from using the town vehicle for the remainder of his tenure" and (2) "terminated him within two months of his

return." (Appellant's Brief at pp. 11, 33). Neither circumstance supports Plaintiff's discrimination/retaliation claims.

### 1. <u>Plaintiff's Use of the Town Vehicle</u>

Plaintiff argues that his "inability to use the town vehicle" affected his benefits "since he was forced to use his own vehicle, and the town refused to reimburse him for his mileage." (Appellent's Brief at p. 35). However, changes to the Town Automobile Usage Policy were contemplated and discussed long before Plaintiff was hospitalized. (AA. 57-58). See *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise"); *Krasner v. City of New York*, 2014 U.S. App. LEXIS 16600 (2d Cir. N.Y. Aug. 28, 2014).

In addition, the Town did not preclude or forbid Plaintiff's use of the Town vehicle. He was still entitled to use it as long as he did so in accordance with the new policy. (AA. 116-117). Nor was Plaintiff singled out as the Town Building Inspector, who had also previously been permitted to keep the vehicle overnight, was also now subject to the new Policy. (AA. 117-118).

Furthermore, the change in the Policy cannot be characterized as an adverse employment action "[u]nder even the most liberal reading of the phrase". (A. 238). Plaintiff's working environment did not become "inferior" or "adverse" as compared to the "normal" workplace. Plaintiff had been the *only* employee in the Parks and Recreation Department to *ever* have been granted the convenience of keeping the car at his home overnight, without the prior consent of the Town Supervisor. (A. 74 ¶4; AA. 103-105). There is absolutely *no* evidence indicating that 24-hour access to the Town vehicle was part of the terms and conditions of Plaintiff's employment, or that it was a guaranteed employment benefit. If anything, the change to the Policy was a "mere inconvenience" rather than "a *significant* change in benefits" and, as such, "insufficient to support a claim of discrimination." (A. 238-239 citing *Monica v. New York City Off-Track Betting Corp.,* 1995 WL 117879, at \*4, 1995 U.S. Dist. LEXIS 3350 (S.D.N.Y. Mar. 20, 1995) aff'd 1996 U.S. App. LEXIS 2423 (2d Cir.1996); see also, *Mormol v. Costco Wholesale Corp.,* 364 F.3d 54, 57 (2d Cir. 2004) (requiring a "significant change in benefits" to constitute an adverse employment action).

In addition, denial of Plaintiff's requests for mileage reimbursement for use of his personal vehicle was not an adverse employment action, but self-created. The Town vehicle was available to Plaintiff "whenever he wanted," but he "chose not to use" it, and used his personal vehicle without first obtaining any approval for doing

so. (AA. 68-70). Despite being told he had to use a Town vehicle and would not be reimbursed for personal mileage, his reaction "was no, I didn't have to use the Town vehicle." (AA. 142).[7] Accordingly, to the extent Plaintiff bases his retaliation and/or discrimination claims on his use of the Town vehicle, his claims must be dismissed, as he has failed to show that the changes to the Town Policy constituted an adverse employment action. (A. 236-237).

## 2. **Plaintiff's Termination**

Although termination is an adverse employment action, Plaintiff nevertheless fails to state a *prima facie* case of retaliation or discrimination as he cannot demonstrate that the adverse action occurred under circumstances giving rise to an inference of retaliatory intent. Plaintiff argues that the alleged temporal proximity between his disability and medical leave and the adoption of the 2011 Budget provide the requisite causal connection between his protected activity (medical leave) and the elimination of his position) (Appellant's Brief at p. 35 and 38).

The Second Circuit has held that "[t]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected

---

[7] In addition, the amended Automobile Policy clearly provides that an employee must obtain written prior approval from both their supervisor and the Town Supervisor before using the employee's personal vehicle for Town business purposes. (A. 77-78).

activity was closely followed in time by the adverse action.'" *Cifra v. G.E. Co.,* 252 F.3d 205, 217 (2d Cir. 2001) (citation omitted). However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (three-month period insufficient). The Second Circuit has "no bright line test for how close in time the adverse employment action must be to the protected activity," *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.,* 252 F.3d 545, 554 (2d Cir. 2001), but courts in this Circuit, have generally held that a period of two months or more is insufficient to establish a causal connection. See, e.g., *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998) (finding that a two month lapse did not establish a causal connection); *Ruhling v. Tribune Co.,* No. CV 04-2430, 2007 U.S. Dist. LEXIS 116, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); *see, e.g., Garrett v. Garden City Hotel, Inc.,* 2007 WL 1174891, at *20-21, 2007 U.S. Dist. LEXIS 31106 (E.D.N.Y. Apr. 19, 2007) (two-and-a-half months "preclude[d] a finding of a causal connection"); *Ponticelli v. Zurich Am. Ins. Group,* 16 F. Supp. 2d 414, 436

(S.D.N.Y. 1998) (two-and-a-half months "is hardly the close proximity of time contemplated by [the Second Circuit] for allowing a plaintiff to establish the 'causal connection' element of [a] retaliation claim").

Here, Plaintiff was disabled and on medical leave from May 2010 until his return to work on July 12, 2010, the Monday after his July 7, 2010 discharge from the hospital. (AA.84, 86). The vote on the Town budget for 2011 took place on November 18, 2010 (A. 57-70, AA. 161) and Plaintiff's last day of work with the Town was December 31, 2010. (AA. 82). Thus, Plaintiff continued to work for five months after the protected activity, precluding a finding of a causal connection as a matter of law. Even assuming Plaintiff's contention that the adverse employment action was the date of the November 18, 2010 Budget vote, no causal connection may be inferred by the four month intervening time period from July 12, 2010 to November 18, 2010.

## C. Plaintiff's Claims Under the ADEA

The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1); see id. § 631(a) (establishing that the ADEA applies only to individuals who are at least 40 years old). A plaintiff may prove that his discharge was "because of his age by showing that his "age played a motivating role in, or contributed to, the employer's

decision," *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 162 (2d Cir, 1998). He "may prove that the forbidden animus 'was a motivating factor' through the presentation of either 'direct' or 'circumstantial' evidence." *Id.* at 162 (citation omitted).

In support of his ADEA claim, Plaintiff alleges that an inference of discrimination should be drawn from certain ageist remarks directed at him as well as another employee (Appellant's Brief at p. 26). However, Plaintiff has failed to come forward with admissible evidence demonstrating that his termination occurred under circumstances giving rise to an inference of the "forbidden animus" or that his age was a motivating factor in his termination.

Plaintiff testified that after he was notified that his position would be eliminated by the 2011 Budget, Ms. Bohrman told him "between tears" that "they [told] her . . . that Ray [Knox] is not going to be employed after December 31st, we are cutting his position, and we chose him because he already has a retirement coming to him." (A. 183). Plaintiff further avers that Councilman Gross, a non-party to this suit, was the individual who made the alleged statement to Ms. Bohrman. (A. 107). However, as the District Court held, this statement of what Councilman Gross allegedly told Bohrman constitutes inadmissible hearsay not to be considered on a motion for summary judgment. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561,

566 n.2 (S.D.N.Y. 2010) (citing *H. Sand & Co, v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991).

Plaintiff argues that the statement is admissible as an "excited utterance" or as an "admission of a party opponent." (Appellant's Brief at p. 27). Neither evidentiary rule applies. An "excited utterance" is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement caused by the event or condition." See, e.g., *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998) (quoting Fed. R. Evid, 803(2)). Here, Ms. Bohrman, who allegedly made the "retirement" statement to Plaintiff "between tears" was "crying before they even got there," and was aware that Plaintiff's position would be abolished before even Plaintiff knew. (A. 183). These facts do not trigger the "excited utterance" provision; that is, they do not suggest that Ms. Bohrman was under the "stress of excitement caused by the event" sufficient to provide some guarantee of reliability with regard to Ms. Bohrman's statement.

Plaintiff's cites only *United States v. Frost,* 684 F.d 973 (10th Cir. 2012) in support of his claim that Ms. Bohrman's statement was admissible as an excited utterance because she was crying. However, the fact of Ms. Bohrman crying does not trigger the excited utterance exception to hearsay. *Frost,* which involved statements made by a 17 year old victim of a rape to her sister shortly after the

rape occurred, is certainly distinguishable from the case at bar. Ms. Bohrman, unlike the young rape victim, was under no stress as a result of the notification that Plaintiff's position would be eliminated by the 2011 Budget.

Moreover, as the alleged out-of-court statements were made by Ms. Bohrman and Councilman Gross, neither of whom is a party, the rule relating to the admissibility of statements by a party opponent is clearly not applicable. See Fed. R. Evid. 801(d)(2). Plaintiff argues that because "[i]t is undisputed that at the time the statement was made, Mr. Gross was a member of the Town Board" the statement was "an admission of a party opponent." However, it is not Mr. Gross's statement that is being offered, it is *Ms. Bohrman's* statement as to what the nonparty councilman allegedly said that Plaintiff seeks to have admitted. *Schering v. Pfizer, Inc.*, 189 F.3d 218 (2d Cir. 1999), the only case that Plaintiff relies upon for this proposition, deals with the admissibility of survey evidence, not the alleged out of court statements made by a non-party employee.

Plaintiff also attempts to show discriminatory intent because "Defendants admit that there were ageist discriminatory emails sent by board members to other Town employees" (Appellant's Brief at p. 29) citing Defendant Cullen's testimony that he was copied on an email from Defendant Yee to the former Town Clerk, Ruth Mazzei, "basically making fun of her because she was in [her] '70s."

(A. 135-136). Plaintiff also relies upon an affidavit by Ms. Mazzei, in which she stated that she retired as the Town Clerk in 2011 because of the alleged constant "ageist harassment" to which she was subjected by Defendants Rights and Yee; that they sent her "vicious emails;" and that in one of those purported emails, Rights asked, "isn't it past time for you to retire?" (Appellant's Brief at p. 29 citing to A. 213). Notably, not one of the allegedly offensive emails was produced below.

Verbal comments may constitute evidence of discriminatory motivation if a plaintiff can demonstrate that a sufficient nexus exists between the allegedly discriminatory statement and a defendant's decision to discharge the plaintiff. *Schreiber v. Worldco, LLC*, 324 F. Suppx, 2d 512, 518 (S.D.N.Y. 2004). However, "[s]tray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision." *Id.* at 518-19. The "more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin, Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (citing *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.171, 182 (2d Cir. 1992) (describing remarks as "stray" when made "in the workplace by persons who are not involved in the pertinent decision-making process"); *Rose v. New York City Bd. of Educ.*,

257 F.3d 156, 162 (2d Cir. 2001) (contrasting "the stray remarks of a colleague" with "comments made directly to" the plaintiff on more than one occasion by someone with "enormous influence in the decision-making process"); *Slattery v. Swiss Reinsurance Am, Corp.*, 248 F.3d 87, 92 n.2 (2d Cir. 2001) (characterizing remarks as "stray" where they were "unrelated to [the plaintiffs] discharge").

Conversely, "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Id.* (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir, 1998) (explaining that the label "stray" is inappropriate where "other indicia of discrimination" tie the remarks to.an adverse employment action); *Kirsch*, 148 F.3d at 162-63 (rejecting the label "stray" where decision-makers uttered age-related remarks near the time of plaintiffs discharge)).

In determining whether a remark is probative, courts consider four factors: (i) who made the remark (i.e., decision-maker, supervisor, or a low-level co-worker); (ii) when the remark was made in relation to the employment decision at issue; (iii) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (iv) the context in which the remark was made (i.e., whether it was related to the decision-making process). *Henry v. Wyeth*

*Pharms., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010) (collecting cases), cert. denied, 131 S.Ct. 1602 (2011).

Here, the alleged discriminatory remarks made to Ms. Mazzei are isolated, stray remarks which, when considered in the context of all the evidence, are too "remote and oblique . . . in relation to the employer's adverse action" to permit a reasonable jury to find for Plaintiff. *Tomassi*, 478 F.3d at 115. Although Rights and Yee were members of the Town Board, it is undisputed that they voted against adoption of the Budget that eliminated the Plaintiff's position. Accordingly, no discriminatory intent can be inferred from their alleged comments to Ms. Mazzei with respect to their actions toward Plaintiff.

In addition, Plaintiff points to no evidence to support an inference that the Board members who voted in favor of the 2011 Budget were motivated in any way by Plaintiff's age or the comments allegedly made to Ms. Mazzei. Plaintiff also does not indicate how close in time to the Budget vote those allegedly ageist comments to Ms. Mazzei were made. It is clear, however, that those comments had no connection or relation to the adoption of the 2011 Budget, which abolished several positions. In addition, there is no evidence that any such ageist comments or harassment were ever made or directed towards Plaintiff. Accordingly, under these circumstances, the stray and unrelated remarks by Defendants Rights and

Yee to Ms. Mazzei are insufficient to raise an inference of age discrimination towards Plaintiff.

Plaintiff's argument regarding "cat's paw" liability is unavailing. Unlike *Back v. Hastings on Hudson Union Free School District,* 365 F.3d 107 (2d Cir. 2004), where the views and recommendations of the plaintiff's direct supervisors were tainted with discriminatory animus which motivated their negative recommendations to the ultimate decision maker, in this case, Plaintiff has produced no evidence that the Budget decision eliminating his position was motivated in any way by his age.

Plaintiff also makes the bald assertion that, along with himself, all of the Town employees who were terminated in 2010 and 2011 were older than 40 years, yet he produces no evidence and does not even identify their names. (Appellant's Brief at pp. 31-32). However, because Plaintiff bears the burden of demonstrating an issue of material fact and to set forth any undisputed facts from which the inference can be drawn that Defendants discriminated against him because of his age, this claim fails. He has simply not met his burden.

Finally, in addition to the federal claims, Plaintiff also brings an age and disability discrimination claim pursuant to the NYSHRL. It is well-settled that the elements of an employment discrimination claim are essentially the same under

the NYSHRL and its federal counterparts. *Tyler v, Bethlehem Steel Corp.,* 958 F2d 1176, 1180 (2d Cir. 1992), Accordingly, as the Defendants are entitled to summary judgment on the ADEA and ADA claims, Plaintiffs NYSHRL claim must also be dismissed.

## CONCLUSION

For all of the reasons set forth herein, it is respectfully submitted that the March 31, 2014 Opinion and Order dismissing the complaint in all respects should be affirmed in its entirety.

Dated:      White Plains, New York
            October 30, 2014

          Yours, etc.

          GAINES, NOVICK, PONZINI, COSSU & VENDITTI, LLP

          By: *Denise M. Cossu*
          Denise M. Cossu (6900)
          James A. Randazzo (0156)
          *Attorneys for Defendants*

          11 Martine Avenue, 8th Floor
          White Plains, New York 10606
          (914) 288-9595

## CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL
## RULES OF APPELLATE PROCEDURE 32

The foregoing brief was prepared on a computer. A proportionally spaced typeface was used as follows:

Name of Typeface:     Times New Roman

Point Size:     14

Line Spacing:     Double

Type-Volume Limitation Compliance: Pursuant To Federal Rules Of Appellate Procedure 32(a)(7)(B)(ii), the Number of words, inclusive of Point Headings and footnotes and exclusive of pages containing the table of contents, Table of Citations, proof of service, certificate of compliance or any authorized addendum containing statutes, rules, regulations, etc. is 10,757.


DENISE M. COSSU
*Attorneys for Defendants*

11 Martine Avenue, 8th Floor
White Plains, New York 10606
(914) 288-9595